917 P.2d 100 (1996)
129 Wash.2d 320
PRESIDENTIAL ESTATES APARTMENT ASSOCIATES, a Washington Joint Venture, and Stanley V. Piha, Managing Joint Venturer, Respondents,
v.
William E. BARRETT and Sally T. Barrett, husband and wife, Robert V. Yeakel and Fern L. Yeakel, husband and wife, and Barrett-Yeakel, a Washington general partnership, Petitioners.
No. 63079-8.
Supreme Court of Washington, En Banc.
Argued February 8, 1996.
Decided May 30, 1996.
*101 Gordon, Thomas & Honeywell, John C. Guadnola, Tacoma, for petitioners.
Sternberg, Thomson & Okrent, Terry E. Thomson, Seattle, for respondents.
ALEXANDER, Justice.
Relying on Civil Rule 60(a), which authorizes a trial court to correct a "clerical error,"[1] the trial court entered an amended judgment, stating that the original judgment was in error to the extent it did not reflect its intention regarding two issues. The Court of Appeals reversed, concluding that the amended judgment did not remedy a clerical error, but instead dealt with what the Court of Appeals considered to be "judicial errors," which are not correctable under CR 60(a). Thus, on review we must decide whether a trial court may, pursuant to CR 60(a), amend a judgment to reflect its previously unexpressed intent, and, if so, under what circumstances. We affirm the Court of Appeals in part and reverse it in part.
In 1991, the Barrett-Yeakel partnership built the Colonial Commons II apartment *102 complex on a landlocked parcel in King County. The land on which the complex was built was benefited by a 390-foot-long easement along the edge of an adjacent parcel of property on which is located Presidential Estates Apartments. The easement provides the benefited party, Barrett-Yeakel, with "ingress and egress and for utilities for a total of up to sixteen (16) living units."[2] Stipulation, Order and J. for Prescriptive Easement, Pls.' Ex. 5 at 2.
The litigation leading to this appeal began when the Maribar Group, the then-owners of the Presidential Estates Apartments, commenced an action in King County Superior Court to enjoin what it contended were four encroachments by Barrett-Yeakel onto its property:
1. The connection of the Colonial Commons II storm water system to that of Presidential Estates Apartments' storm water system.
2. Use of the easement for access for 18 living units, instead of the authorized 16 units.
3. Use of the access for 20 storage units, when access for none is authorized.
4. Use of 548 feet of the Presidential Estates Apartments' property for additional access, instead of the authorized 390 feet.
Pls.' Trial Br., Clerk's Papers at 54-55. Prior to trial, the Maribar Group sold its interests in the adjacent property to Presidential Estates Apartment Associates (Presidential), which was subsequently substituted as plaintiff.
After a trial to the court, the trial court found that Barrett-Yeakel had encroached upon Presidential's property in the four ways claimed. Although it concluded that each of the encroachments should be enjoined, the trial court also concluded that, "sitting in equity," it would fashion "an alternative remedy," as follows:
I am enjoining, as I've indicated, the four encroachments. But as it relates to the encroachment concerning the additional two units only, I am going to give ... the ability of the defendants to use the easement for the two additional spaces, provided [Barrett-Yeakel pays Presidential] $22,500 within 30 days.
Report of Proceedings at 276, 277. The trial court entered written findings of fact, conclusions of law, and a judgment consistent with its oral ruling. Barrett-Yeakel then paid $22,500 to Presidential.
The time for appeal passed without an appeal having been taken by either party. Shortly thereafter, however, Presidential contacted a City of SeaTac fire inspector, and, using the judgment as support, asserted that it was within its rights to prevent access by vehicles, including emergency vehicles, beyond the 390-foot easement to the more southerly of the two entrances to Colonial Columns II. Thus it contended that Barrett-Yeakel was in violation of SeaTac's fire code.[3] This prompted Barrett-Yeakel to petition the judge who had presided at the trial at which the encroachments had been *103 enjoined, for clarification of the judgment, pursuant to CR 60(a).[4] The trial judge granted Barrett-Yeakel's motion, ruling that, in addition to granting ingress and egress for 18 living units, he had intended to allow Barrett-Yeakel to (a) have the driveway to Colonial Commons II's southern entrance available for emergency access, and (b) lay a storm water drain pipe under the 390-foot easement. The trial court then entered an amended judgment to reflect what it said was its original intent.
Presidential appealed to the Court of Appeals, Division I, which reversed the trial court. The Court of Appeals rejected Barrett-Yeakel's argument that the amendment was merely a correction of a clerical error, concluding instead that "the omissions from the original judgment were not merely mechanical mistakes," but rather were "substantive changes to the original decision" which gave Barrett-Yeakel "additional benefits [that are] absent from the original record... which significantly alter[] the original judgment." Presidential Estates Apartment Assocs. v. Barrett, No. 32689-9-I, slip op. at 4, 5 (Apr. 24, 1995). On Barrett-Yeakel's motion, we granted review.

I
Barrett-Yeakel contends that the Court of Appeals erred in reversing the trial court's order amending the judgment enjoining the encroachments. In support of its contention, Barrett-Yeakel argues that the trial court did not abuse its discretion in entering the order amending judgment pursuant to CR 60(a) because it merely brought the judgment into conformity with its original intent. In that regard, Barrett-Yeakel asserts that CR 60(a) is the current embodiment of a trial court's inherent power to modify a judgment to make it conform to the judgment it intended to enter. Seattle-First Nat'l Bank v. Treiber, 13 Wash.App. 478, 480, 534 P.2d 1376 (1975) (discussing O'Bryan v. American Inv. & Improvement Co., 50 Wash. 371, 374, 97 P. 241 (1908)). It argues, additionally, that, absent evidence tending to show that the trial court was misled, mistaken, or lied about what its original intent was, the Court of Appeals should have deferred to the trial court's latter-stated expression of its intent.
Presidential responds that the Court of Appeals correctly concluded that the trial court abused its discretion in ordering the amendment of the judgment. It argues that the amended judgment reflects a new expression of intent that is in "irreconcilable conflict" with the trial court's original intent, as expressed in the trial court's oral decision, findings of fact, conclusions of law, and judgment. Answer to Pet. for Review at 1, 2. Finally, Presidential contends that the trial court's latter-stated intent is merely "conclusory and unsubstantiated claims of a `new intent.'" Answer to Pet. for Review at 2.

A
We are satisfied that the Court of Appeals was correct when it concluded that the trial court abused its discretion in amending the judgment to provide access for emergency vehicles over Presidential's property. That is so because, in our judgment, the trial court was attempting to correct judicial error when it did so. This it cannot do pursuant to CR 60(a). We reach that conclusion because that rule allows a trial court to grant relief from judgments only for clerical mistakes. It does not permit correction of judicial errors. In re Marriage of Stern, 68 Wash.App. 922, 927, 846 P.2d 1387 (1993); In re Marriage of Getz, 57 Wash. App. 602, 604, 789 P.2d 331 (1990).
In deciding whether an error is "judicial" or "clerical," a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial. Marchel v. Bunger, 13 Wash.App. 81, 84, 533 *104 P.2d 406, review denied, 85 Wash.2d 1012 (1975). If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and, therefore, must be judicial. Thus, even though a trial court has the power to enter a judgment that differs from its oral ruling, once it enters a written judgment, it cannot, under CR 60(a), go back, rethink the case, and enter an amended judgment that does not find support in the trial court record.[5]
The amendment that was undertaken here fails under the above authority because there is nothing in the record of the trial to support the contention that the trial court unintentionally failed to put in the judgment a provision regarding access over Presidential's property for emergency vehicles. Conversely, and significantly, there is much in the record indicating that the trial court harbored the opposite intention. It is clear from the record that we have been furnished that, at the time the trial court issued its original judgment, it was keenly aware of the importance of the issue of emergency access.[6] Report of Proceedings at 19-21, 37-38, 58, 156-58, 167-68, 192-93, 212-13. Despite this testimony, the trial court said, in its oral ruling, that "there will be no right to use easement beyond 390 feet."[7] Furthermore, its written conclusions of law[8] and judgment[9] mirrored that sentiment. In short, the record unambiguously supports the conclusion that the trial court was attempting to correct judicial error. The Court of Appeals, therefore, correctly concluded that the portion of the amended judgment relating to access for emergency vehicles was not correctable under CR 60(a).
In affirming the Court of Appeals, we acknowledge that the trial court may have sincerely believed that the additional relief it provided in the amended judgment could be *105 implied from the spirit of the equitable remedy that it had crafted in the original judgment. In the absence of any expression in the trial record showing that the trial court intended at the time the original judgment was entered to grant that additional relief, however, there is simply no basis upon which this, or any reviewing court, can possibly fit the correction within the scope of CR 60(a).

B
Insofar as the amended judgment permits Barrett-Yeakel to install a storm drain under the easement, we disagree with the Court of Appeals's conclusion that this portion of the amended judgment was an impermissible attempt to correct a judicial error. Unlike the state of the record regarding emergency access, the trial record supports Barrett-Yeakel's assertion that the trial court originally intended to permit the storm drain to be located under the easement.[10]
In the original judgment, the trial court enjoined Barrett-Yeakel from asserting any right or interest in the property of Presidential Estates except for the 390-foot easement that was established in 1988 for ingress and egress and utilities. While the original judgment was, arguably, a bit ambiguous as to where such a storm drain could be located, it is appropriate for a court to invoke CR 60(a) to clarify an ambiguity in a judgment. In situations such as exist in this case, where a judgment is unclear or ambiguous, a judge's latter-stated explanation of his or her original intent has been accepted by the reviewing court to clarify such ambiguities. See, e.g., Getz, 57 Wash.App. at 604-05, 789 P.2d 331; accord In re Kramer's Estate, 49 Wash.2d 829, 830, 307 P.2d 274 (1957) (amended judgment affirmed under Rule of Pleading, Practice and Procedure 7, in part based on testimony of judge who entered original and amended judgments).[11]
Contrary to Presidential's contention, the portion of the amended judgment that permits Barrett-Yeakel to install and maintain a waste water line under the 390-foot easement does not conflict with the original ruling. The original judgment does not preclude an underground utility because it refers to the 1988 easement which appears to contemplate the placement of utilities under, in, as well as over, the length of the easement. The amended judgment provides clarification only as to where the storm drain may be located, and, therefore, merely serves to correct a clerical oversight or omission. As noted above, CR 60(a) permits such corrections.

II
Presidential seeks an award of reasonable fees and costs, pursuant to RAP 18.9(a),[12] contending essentially that Barrett-Yeakel's appeal is frivolous. More specifically, Presidential asserts that Barrett-Yeakel has "abuse[d] ... the appellate process" by pursuing "a misguided review, based on a calculated disregard or distortion of the trial court record." Answer to Pet. for Review at 18, 17.
"An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal." Fay v. Northwest Airlines, Inc., 115 Wash.2d 194, 200-01, 796 P.2d 412 (1990). Not only has Barrett-Yeakel *106 presented a debatable issue regarding the application of CR 60(a) in this case, it has prevailed in part. This appeal, therefore, is not frivolous and Presidential's request for an award of attorney fees is denied.
The decision of the Court of Appeals is affirmed in part and reversed in part.
DOLLIVER, GUY, MADSEN and SANDERS, JJ., concur.
JOHNSON, Justice. (dissenting).
I disagree with the majority's opinion because it fails to recognize the discretionary nature of CR 60(a) and will restrict the ability of trial courts to fully resolve disputes and preserve judicial resources. The majority's analysis falls short because it: (1) fails to review the entire record; (2) reaches inconsistent results regarding two necessarily related corrections; (3) throws the parties back into a dispute; and (4) substitutes its judgment for a discretionary trial court decision. The amended judgment in this case is entirely consistent with the purposes embodied in CR 60. I would find that the trial court's actions were appropriate.
The proper focus of a CR 60(a) analysis is on the trial court's motive in exercising its discretionary authority under the rule. That is, CR 60 allows trial courts to modify their judgments when their intent is not fully carried out in the original judgment. A reviewing court should not second guess a trial court's discretionary decision, and substitute its intent for that of the trial court. Because the trial court in this case was correcting a judgment that did not give effect to its intent in fashioning the original judgment, I would affirm the amended judgment of the trial court.
Importantly, the trial court in this case fashioned an equitable remedy intended to completely resolve the dispute between the parties. See Eichorn v. Lunn, 63 Wash.App. 73, 80, 816 P.2d 1226 (1991) (goal of court sitting in equity is to completely resolve the dispute before it). The record indicates the trial court's intention in this case was to fashion this equitable remedy by enjoining the complained of encroachments in part, compensating the Plaintiffs in part, and allowing the Defendants to continue to operate their apartment complex. The trial court's amendments to the judgment in this case served the limited purpose of ensuring the dispute between these parties would be resolved.
To this end, the trial court exercised its discretionary authority under CR 60(a) to amend its original judgment. CR 60(a) provides trial courts a framework for exercising their authority to modify judgments to reflect their intent. The rule allows trial courts to correct "[c]lerical mistakes ... arising from oversight or omission...." CR 60(a).
In order to determine whether a purported error is "clerical" and whether CR 60(a) applies, the majority relies on a line of Court of Appeals cases which classifies errors as either clerical or judicial, depending upon whether or not there is support in the record for the amended judgment. Majority at 103-04.
While I agree CR 60(a) requires distinguishing between clerical and other types of errors, I do not find this analysis particularly helpful in determining whether a trial court abuses its discretion by modifying a judgment under CR 60(a). A more helpful analysis begins with understanding what CR 60(a) does and does not allow. CR 60(a) does not allow a trial court to correct what it intentionally did, but it does allow the trial court to correct a judgment which, through oversight or omission, does not reflect the court's original intent. This principle is clearly articulated in federal decisions interpreting the analogous federal provision, Fed.R.Civ.P. 60(a).
The basic distinction between "clerical mistakes" and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of "blunders in execution" whereas the latter consist of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.
*107 Blanton v. Anzalone, 813 F.2d 1574, 1577 n. 2 (9th Cir.1987). See also American Fed'n of Grain Millers, Local 24 v. Cargill, Inc., 15 F.3d 726, 728 (7th Cir.1994) (distinguishing "between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error") (quoting Wesco Prods. Co. v. Alloy Auto. Co., 880 F.2d 981, 984 (7th Cir.1989)). A judge may use CR 60(a) to make a judgment reflect the actual intentions of the court, plus necessary implications. Jones & Guerrero Co. v. Sealift Pac., 650 F.2d 1072, 1074 (9th Cir.1981). An important point to remember in applying this rule is modification of a judgment is an act squarely within the discretion of the trial court. O'Bryan v. American Inv. & Improvement Co., 50 Wash. 371, 374, 97 P. 241 (1908); see also In re the Marriage of Tang, 57 Wash.App. 648, 653, 789 P.2d 118 (1990) (applying CR 60(b)).
The majority, in its review of the record, finds "there is nothing in the record of the trial court to support the contention that the trial court unintentionally failed to put in the judgment a provision regarding access over Presidential's property for emergency vehicles." Majority at 104. The majority goes on to state "there is much in the record indicating that the trial court harbored the opposite intention." Majority at 104. However, the majority limits its review of the record to the trial court's oral decision and the original written judgment, and fails to search the complete record. By looking at the testimony offered at trial, the trial court's amendment was not only proper, it was required.
At trial, the three witness who gave live testimony (Mr. Piha (Plaintiff), Mr. Yeakel and Mr. Barrett (Defendants)) all discussed the emergency fire access. Report of Proceedings at 20, 68, 156, 167, 192, 212. The common thread in each of these witnesses' testimony was that emergency vehicle access is required by the fire department for the Defendants' apartment complex to operate. Whether or not the emergency vehicle access issue was "directly in dispute" is not important. What is important is the fact the trial court had before it considerable testimony acknowledging that emergency vehicle access is required to operate the apartments. In fashioning the equitable remedy, the trial court was aware that emergency vehicle access was required. The trial court's judgment, the equitable payment of $22,500, makes no sense if the apartment complex is not able to operate. The amendment to the judgment was consistent with the trial court's original intent.
On the other hand, nothing in the record supports the plaintiffs' contention, and the majority's finding, that the trial court changed its mind based on a legal or factual mistake. Rather, the trial court acted squarely within its discretion by recognizing that the equitable remedy it entered did not give full effect to its intent to fully resolve the controversy.
Further support for this reading of the record is found in statements made by the trial court in amending the original judgment. In applying CR 60(a), reviewing courts recognize that a trial court's own subsequent statements of intent are material when reviewing relief granted under CR 60(a). In re Jee, 799 F.2d 532, 535 (9th Cir.1986), cert. denied, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987); In re Marriage of Getz, 57 Wash.App. 602, 604-05, 789 P.2d 331 (1990). In this case, the trial judge made the following statements at the hearing on presentation of the amended judgment:
[T]he court was sitting in equity, and it seems to me that the findings, facts, conclusions of law and judgment simply did not clearly state the Court's intent.
....
[M]y intent in fashioning [an] equitable remedy was really to permit them to have the kind of use as relates to these encroachments with the payment of money.
The only encroachments really that were significantly litigated related to the ingress and egress of the 18 or 16 units. The fire ingress and egress, the southern access was in my judgment basically a de minimis kind of impact on Presidential Estates, as well as putting an easement underground out to the street when you disconnected the storm drainage system.

*108 So the decision and findings of fact really did not clearly encompass my intent in exercising equitable powers in trying to fashion [an] equitable remedy which was offered in part by Presidential Estates, but the Court also independently tried to fashion a remedy.
Clerk's Papers at 276-78. Furthermore, no evidence exists in the record, nor has Plaintiffs' counsel made any persuasive allegation, that the amended judgment will have an adverse effect on Presidential Estates. See O'Bryan, 50 Wash. at 374, 97 P. 241.
If the majority's review of the record on the fire access issue constitutes the proper scope of review, then, to be consistent, the majority would have to reverse the amendment allowing for the storm drain easement because it too is not specifically mentioned or allowed by the oral decision or original written judgment. But the majority does the opposite and finds support for the storm drain amendment by delving deeper into the record and finding that the word "through" contained in the stipulated easement authorizes the storm drain hook-up. I agree entirely with this approach. I wish the majority had made a similar in-depth examination of the record with regard to emergency vehicle access. Such an in-depth examination (as demonstrated above) provides ample support for the trial court's amendment. The majority's failure to consistently examine the record and apply the rule results in an inconsistent decision, allowing one correction but not another. Based on the dispute between these parties and the record, both corrections are required to give effect to the intent of the trial court in fashioning an equitable remedy that completely resolves this case.
The majority's decision leaves the parties guessing as to where they now stand. By allowing the storm drain easement, the majority appears to agree that the judgment was intended to allow the Defendants to operate their apartment complex. However, the denial of the emergency vehicle access easement raises questions as to what additional actions the Defendants must now pursue in order to effectuate that intent. Options may include filing new motions, a new lawsuit, negotiations, or tearing down part or all of the apartment complex. The trial court, however, properly sought to resolve all of these remaining issues in handing down its equitable remedy. The majority's inconsistent decision creates needless uncertainty in both parties and fails to completely resolve their dispute.
This uncertainty results from the majority's substituting its version of the trial court's intent for the trial court's own intent. The best evidence of a trial court's intent is its own statements articulating that intent. Unless the record contains absolutely nothing to support the trial court's statements of its own intent, a reviewing court should not substitute its reading of intent. While our job is to provide guidance to trial courts, we should not second guess their discretionary decisions, substituting their judgment with our own, when the trial judge is in the best position to fully understand the panoply of factors contributing to any single decision.
Based on the testimony at trial, the court's statements in fashioning its equitable remedy, and the court's subsequent statements of intent, the trial court acted properly under CR 60(a) by correcting and clarifying an omission from its original judgment. Therefore, I dissent.
DURHAM, C.J., and SMITH and TALMADGE, JJ., concur.
NOTES
[1] Civil Rule 60(a) specifically "Clerical Mistakes," and reads, in relevant part, as follows:

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."
[2] The easement was established in a separate action that dated back to 1988. The judgment in that action provided, in relevant part, as follows:

"a) The easement is legally described as follows:
THE NORTH 390 FEET OF THE EAST 30 FEET OF THE NORTHEAST ¼TH OF THE NORTHEAST ¼TH OF SECTION 9, TOWNSHIP 22, N.R. 4E W.M. in KING COUNTY, WASHINGTON....
"....
"b) This easement is and shall be for the purposes of ingress and egress and for utilities for a total of up to sixteen (16) living units ... and shall run with the land.
"c) [The benefited property owner] shall obtain all necessary permits for use of the easement and extension of utilities through the easement to South 208th Street[, and] shall bear the sole cost of replacement of all utilities desired by [such owner] to be placed in the easement, and all restoration of the roadways and parking areas effected [sic] by construction ... to a state of repair commensurate with its state prior to construction." Pls.' Ex. 5 at 2-3.
[3] Barrett-Yeakel constructed two entrances into Colonial Commons II. Both entrances connect with 32nd Lane, a private road that is located on the property of Presidential Estates. The first, or northern, entrance is situated so that it connects with 32nd Lane within the 390-foot easement described above. The other more southerly entrance is located approximately 548 feet south of the public road that defines the northern end of the easement, and is thus outside of the easement.
[4] Barrett-Yeakel initially filed a motion for relief under CR 60(b), which provides, in part, that a court "may relieve a party ... from a final judgment [because of] mistakes, inadvertence, surprise, excusable neglect or irregularity" in obtaining the judgment. Barrett-Yeakel initially asked the court to clarify only whether it had intended to permit access to the southern entrance into Colonial Commons II. It subsequently abandoned its reliance upon CR 60(b) in its argument before the trial court and the Court of Appeals, and has not raised CR 60(b) in its petition for review to this court.
[5] A statement made at oral argument before this court illuminates another indicator of the essential distinction between "clerical error" and "judicial error." Counsel for Barrett-Yeakel began its argument and said that it asked the trial court to "amend the judgment because we did not believe that he intended the results of his original judgment." Oral argument tape 1 (Feb. 8, 1996). Whether a trial court intended that a judgment should have a certain result is a matter involving legal analysis and is beyond the scope of CR 60(a). The rule is limited to situations where there is a question whether a trial court intended to enter the judgment that was actually entered.
[6] The dissent characterizes this testimony as "acknowledging that emergency vehicle access is required to operate the apartments." Dissent at 107. We disagree. Our reading of the record convinces us that it was an open question whether there were other measures available to Barrett-Yeakel that would satisfy the City of Seatac fire safety requirements and still allow the apartments to operate, or whether the city's fire code would require the emergency access to remain as it was. Indeed, a letter in the record from a fire inspector for the City of SeaTac seems to indicate that other options existed. Clerks Paper's at 199-200.
[7] The trial court's oral ruling, in relevant part, was as follows: "I will grant the injunction as it relates to the use of Presidential Estates property beyond 390 feet. In other words, so the record will be clear, whether you call it an order quieting title or an injunction, permanent injunction, it will be clear that there will be no right to use the easement beyond 390 feet." Report of Proceedings at 263.
[8] Conclusion of law 2 reads, in relevant part, as follows: "[A] permanent injunction should issue enjoining ... defendants ... from directly or indirectly:

a. Using any portion of the property of plaintiffs [Presidential Estates] in excess of that expressly authorized in the Court-Ordered Easement, including but not limited to any access in excess of the 390-foot easement set forth therein." Clerk's Papers at 117.
[9] The judgment reads, in relevant part, as follows: "[Barrett-Yeakel is] hereby permanently enjoined and restrained from, directly or indirectly:

1. Using or encroaching upon or interfering with the Presidential Estates Apartments property, or any portion of it, for any purpose or reason, except for the limited right of ingress and egress and utilities authorized by the 390-foot Court-Ordered Easement for the Colonial Commons II property [, and from u]sing the 548.09-foot access over the Presidential Estates Apartment property identified, among other things, in the ... "Access Easement" plan, and "Site" plan... purporting to provide a second access over the Presidential Estates Apartments property for the benefit of Colonial Commons II." Clerk's Papers at 126-27.
[10] The fact that we held that it was appropriate under CR 60(a) to amended the judgment to permit installation of a storm drain under the easement, and that it was inappropriate under that same rule to afford emergency access to Barrett-Yeakel is not, as the dissent indicates, an "inconsistent decision" that "fails to completely resolve [the parties'] dispute." Dissent at 108. Although Barrett-Yeakel may indeed have safety issues that it wishes to address with the City of SeaTac, the trial court's original judgment, as we have interpreted it here, resolves completely the dispute between Barrett-Yeakel and Presidential.
[11] CR 60(a) is identical in all relevant respects to, and is the antecedent to, Rule of Pleading, Practice and Procedure 7.
[12] RAP 18.9(a) provides, in relevant part, as follows: "The appellate court on its own initiative or on motion of a party may order a party or counsel ... who uses these rules [of appellate procedure] for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply."