FILED
COURT OF APPEALS
DIVISION II

2014 OCT 21 AM 9: 16

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BUSINESS SERVICES OF AMERICA II, INC., | Consolidated Nos. 45325-8-II 46138-2-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WAFERTECH LLC, | |
| Respondent. | |

MAXA, J. — Business Services of America II, Inc. (BSofA) appeals the trial

court's (1) grant of summary judgment to WaferTech LLC in BSofA's lien foreclosure

action as assignee of a subcontractor wrongfully terminated on WaferTech's construction

project, and (2) denial of BSofA's motion under CR 60(a) to correct an alleged error in

its corporate name. In response, WaferTech argues that BSofA's appeal must be

dismissed because a corporation called Business Services of America II, Inc. has never

existed, and therefore BSofA cannot be an aggrieved party entitled to seek review under

RAP 3.1.

We hold that the trial court did not abuse its discretion in denying BSofA's CR

60(a) motion, and therefore affirm that denial. However, the record does not allow us to

determine whether BSofA has any legal existence sufficient to allow BSofA to pursue its

appeal of the trial court's summary judgment order. Therefore we must remand for the

trial court to determine BSofA's legal status and BSofA's ability to pursue its appeal

against WaferTech. Because of this disposition, we do not reach the merits of the summary judgment order.

FACTS

*Lawsuit and Settlement*

In early 1997, WaferTech hired Meissner + Wurst (M+W) as one of the prime contractors involved in constructing WaferTech's silicon wafer manufacturing plant. M+W subcontracted with Natkin/Scott to construct the facility's "clean room." Natkin/Scott performed some work under the subcontract, but it was terminated by M+W in April 1998 for failing to follow safety procedures. Natkin/Scott subsequently filed a mechanic's lien against WaferTech's property in the amount of $7,654,454.

In May 1998 Natkin/Scott sued both M+W and WaferTech, alleging breach of contract, wrongful termination, and quantum meruit against M+W and foreclosure of its construction lien against WaferTech. M+W later asserted a cross-claim against WaferTech, alleging that if Natkin/Scott obtained a judgment against M+W, WaferTech would be obligated to indemnify M+W for that judgment.

In March 2001 Natkin/Scott agreed to resolve its claims against M+W. Under the agreement, M+W paid Natkin/Scott $2.4 million to settle the claims against it. In addition, M+W assigned its "pass-through" rights against WaferTech to Natkin/Scott, allowing Natkin/Scott to directly assert M+W's claims against WaferTech. Subsequently, M+W was dismissed with prejudice from the lawsuit.

In May 2001, BSofA, as "the assignee of claims by Natkin/Scott," substituted as plaintiff in the action and filed a second amended complaint against WaferTech. Clerk's Papers (CP) at

232. As an assignee, BSofA asserted M+W's pass-through claims as well as Natkin/Scott's original lien foreclosure claim. The second amended complaint alleged that on July 23, 1999 Natkin/Scott and BSofA had entered into a sale and servicing agreement in which Natkin/Scott assigned its claims against WaferTech to BSofA.

*Trial and Two Appeals*

At trial in May 2002, the trial court dismissed all of BSofA's claims based on a finding that its assignor Natkin/Scott was not a registered contractor when it contracted with M+W. The trial court also awarded WaferTech over $850,000 in attorney fees and costs in two separate judgments.

On appeal, we held that Natkin/Scott had substantially complied with the contractor registration statute, and therefore we reversed the trial court's dismissal of BSofA's lien foreclosure claim. *See Bus. Servs. of Am. II, Inc. v. WaferTech, LLC*, noted at 120 Wn. App. 1042, 2004 WL 444724, at *4-5. However, we affirmed the trial court's dismissal of the pass-through claims and the award of attorney fees to WaferTech. *Bus. Servs. of Am. II, Inc.*, 2004 WL 444724, at *8. In April 2005 WaferTech filed a satisfaction of judgment with respect to the attorney fee judgments, which stated that the surety of a supersedeas bond BSofA posted had paid the judgments.

After remand, very little appears to have happened in the case for four years. In September 2009, the trial court granted WaferTech's motion to dismiss the case because of BSofA's failure to timely prosecute. BSofA appealed, and we reversed. *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 159 Wn. App. 591, 245 P.3d 257 (2011). Our Supreme Court affirmed

our decision, *Business Services of America II, Inc. v. WaferTech LLC*, 174 Wn.2d 304, 274 P.3d 1025 (2012), and the case was mandated back to the trial court.

*Dismissal Based on Settlement Offset*

Following remand, BSofA filed a third amended complaint asserting its only remaining claim, Natkin/Scott's lien foreclosure claim. WaferTech moved for summary judgment, arguing that M+W's $2.4 million settlement payment to Natkin/Scott in March 2001 was a complete offset against Natkin/Scott's $1.5 million lien claim.[1] BSofA opposed the motion and filed a cross-motion for summary judgment. In August 2013, the court granted WaferTech's motion and dismissed BSofA's third amended complaint. The trial court subsequently awarded attorney fees and costs to WaferTech in the amount of $430,000. BSofA appealed.

*BSofA's Incorrect Corporate Name*

On January 2, 2014, WaferTech filed a motion in this court to dismiss BSofA's appeal under RAP 3.1 because there was no record that a Delaware corporation called Business Services of America II, Inc. had ever existed. WaferTech stated it discovered this fact during attempts to enforce the trial court's judgment for attorney fees. A commissioner denied WaferTech's motion without prejudice to its right to raise the issue in its brief.

BSofA subsequently filed a motion with the trial court to correct an error in the final judgment under CR 60(a). BSofA acknowledged that there is no registered corporation called Business Services of America II, Inc. According to BSofA, the correct name of the corporation is Business *Service* America II, Inc. (BSA II). BSofA explained that BSA II incorporated under

---

[1] The trial court previously had reduced the lien to $1.5 million.

the laws of Delaware in July 1999, and the plaintiff was mistakenly stated as Business Services *of* America II, Inc. when the second amended complaint was filed.

BSofA had no explanation for how the mistake was made. Counsel for BSofA stated in a declaration that he drafted the second amended complaint, but he did not recall how he came to identify the plaintiff as Business Services of America II Inc.

BSofA argued the name of the plaintiff/judgment debtor was erroneous and moved the trial court to correct this mistake in the judgment. WaferTech objected to the motion to the correct the judgment, arguing that (1) BSofA failed to show the modification of the judgment debtor's name was a clerical error, and (2) even if it was an amendable clerical error, BSA II could not be substituted as a judgment debtor because BSA II was a void corporation that lacked power to act under Delaware law.

The trial court denied the CR 60(a) motion without prejudice. BSofA moved for reconsideration, submitting more extensive briefing on whether the court could correct the name of the judgment debtor. BSofA argued that (1) the error in the judgment debtor's name was a misnomer correctable under CR 60(a), and (2) WaferTech would not be prejudiced by allowing the alteration. The trial court again denied the motion. BSofA appealed this ruling.

## ANALYSIS

A.    CR 60(A) MOTION TO CORRECT PLAINTIFF'S CORPORATE NAME

BSofA argues that stating the wrong corporate name in its pleadings was an error caused by oversight or omission, and that an error in a party's name can be corrected under CR 60(a). As a result, BSofA argues that the trial court erred in refusing to correct this error. We disagree because there was conflicting evidence in the record as to whether BSofA or BSA II was the

actual assignee of Natkin/Scott's claims, and therefore the record was not clear on what entity was the correct plaintiff. Therefore, we hold that the trial court acted within its discretion in refusing to change the plaintiff's name to BSA II.

### 1. Legal Principles

We review a trial court's decision to grant or deny a CR 60(a) motion for an abuse of discretion. *Shaw v. City of Des Moines*, 109 Wn. App. 896, 900, 37 P.3d 1255 (2002); *see also Presidential Estates Apt. Assoc. v. Barrett*, 129 Wn.2d 320, 325-26, 917 P.2d 100 (1996) (applying an abuse of discretion standard of review). "The decision will not be overturned on appeal unless it plainly appears that the trial court exercised its discretion on untenable grounds or for untenable reasons." *Shaw*, 109 Wn. App. at 901.

BSofA relies solely on CR 60(a) in arguing that the trial court should have corrected its name.[2] CR 60(a) provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an appellate court, and thereafter may be corrected pursuant to RAP 7.2(e).[3]

This rule allows a trial court to correct an error that renders a judgment inconsistent with the trial court's intention, as expressed in the trial court record. *Presidential Estates*, 129 Wn.2d at 326. The trial court under CR 60(a) can "correct[] language that did not correctly convey the intention of the court, or suppl[y] language that was inadvertently omitted from the original judgment."

---

[2] BSofA asserts that it is not requesting a substitution of parties under CR 17.

[3] RAP 7.2(e) provides that the trial court has authority to decide certain matters despite a pending appeal.

*Presidential Estates*, 129 Wn.2d at 326. A trial court also can use CR 60(a) to clarify an ambiguity in a judgment. *Presidential Estates*, 129 Wn.2d at 328-29.

But CR 60(a) does not allow correction of a "judicial" error. *Presidential Estates*, 129 Wn.2d at 326. A judicial error is one that would require the trial court to amend the judgment to reflect an intention that the trial court record does not support. *Presidential Estates*, 129 Wn.2d at 326. In other words, CR 60(a) does not allow a trial court to "go back [and] rethink the case." *Presidential Estates*, 129 Wn.2d at 326. In addition, CR 60(a) does not allow for the correction of a trial court's intentional act, even if erroneous. *Krueger Eng'g, Inc. v. Sessums*, 26 Wn. App. 721, 723, 615 P.2d 502 (1980).

Under certain circumstances, it is an abuse of discretion for the trial court to refuse to grant a CR 60(a) motion to correct an error in a party's name. In *Entranco Engineers v. Envirodyne, Inc.*, the plaintiff's complaint named Envirodyne Industries Inc. as the defendant, but the plaintiff served Envirodyne Engineers Inc. – the plaintiff's intended defendant. 34 Wn. App 503, 504, 662 P.2d 73 (1983). In addition, "the complaint described only the activities of [Envirodyne] Engineers, the party served." *Entranco*, 34 Wn. App at 506. Following the entry of a default judgment against Envirodyne Industries Inc., the plaintiff filed a CR 60(a) motion to amend the default judgment to substitute in Envirodyne Engineers Inc. as the judgment debtor. *Entranco*, 34 Wn. App at 505. The trial court denied the motion. *Entranco*, 34 Wn. App at 505.

On appeal, Division One of this court held the trial court abused its discretion in not granting the plaintiff's CR 60(a) motion. *Entranco*, 34 Wn. App at 506. The court stated that naming the wrong party as the judgment debtor was not a judicial error because "the commissioner intended to enter a default judgment against the party whose activities were

7

described in the complaint." *Entranco*, 34 Wn. App at 507. The court concluded that the misnomer of the party defendant in the judgment was an error arising from oversight or omission that the trial court possessed authority to correct under CR 60(a). *Entranco*, 34 Wn. App at 507.

2. Existence of Error

BSofA argues that this case is similar to *Entranco* because here the trial court intended to enter the judgment against the assignee of Natkin/Scott's claims, regardless of the name of that assignee. Therefore, BSofA argues that entering the judgment against the wrong entity was a clerical error and not a judicial error. But the question here is not whether entering judgment against BSofA rather than BSA II was or was not a judicial error, but whether the trial court made an error at all. Because the record was not clear that there actually was an error in the judgment – that BSA II and not BSofA was the assignee of Natkin/Scott's claims – the trial court did not abuse its discretion in denying BSofA's CR 60(a) motion.

When considering the CR 60(a) motion, the trial court was faced with conflicting evidence as to whether BSofA or BSA II was the actual assignee and therefore which entity was the correct plaintiff. First, as noted above, the two amended complaints alleged that *BSofA* was the assignee. Nothing in the trial court record before BSofA's CR 60(a) motion suggested that these allegations were erroneous.[4] Specifically, the document in which Natkin/Scott assigned its claim never was placed in the trial court record, either before or after the court entered final judgment.

---

[4] The only document where the name Business Service America II, Inc. appears is the settlement agreement between Natkin/Scott and M+W. But that agreement was executed before the second amended complaint added BSofA as the plaintiff. The trial court could assume that the mistake was in the settlement agreement, to which BSofA was not a party, not in the complaint.

8

Second, *BSofA* was identified as the plaintiff in myriad pleadings, including in two appeals before this court, since first joining the litigation in 2001. The trial court could infer that if BSA II had been the actual assignee and therefore the correct plaintiff, BSofA would have sought to correct the name long before final judgment was entered.

Third, earlier judgments for over $800,000 in attorney fees against *BSofA* were paid. Further, the satisfaction of judgment stated that payment was made by the surety for a supersedeas bond posted by *BSofA*. The record does not indicate whether BSofA or BSA II reimbursed the surety for the payment, but the trial court could infer that the party against which the judgment was entered ultimately paid that judgment. And even assuming BSA II paid the judgment, the trial court could infer that if BSofA was not the correct party, BSA II would have discovered that fact when paying out over $850,000 on BSofA's behalf.

Fourth, and most significantly, in June 2001 Joseph Guglielmo – the person who in 2014 identified himself as BSA II's president – signed an acknowledgment that *BSofA* was the assignee of Natkin/Scott's claims. And he signed that document as president of *BSofA*, not as president of BSA II. Although the acknowledgement was not under oath, this document is compelling evidence that BSofA was in fact the assignee.

The above evidence and inferences created a factual issue as to whether there actually was an error in the judgment. If BSofA was the actual assignee, there was no error and CR 60(a) by its terms would be inapplicable. In other words, BSofA's CR 60(a) motion did not present a simple correction of an obvious error in the plaintiff's name. The trial court had to weigh the evidence showing that BSofA was the assignee of Natkin/Scott's claims against Guglielmo's new contention, contradicting his assertion in 2001, that BSA II was the actual assignee. And

the trial court had to make this factual determination without a copy of the document assigning Natkin/Scott's claims, which could have clarified the issue.

Because of the factual uncertainty as to whether there was an error in the judgment, the trial court did not abuse its discretion in refusing to change the plaintiff's name. Accordingly, we hold that the trial court did not err in denying BSofA's CR 60(a) motion.[5]

B.     ABILITY OF AN UNREGISTERED CORPORATION TO PURSUE APPEAL

Under the trial court's CR 60(a) ruling and our affirmance of that ruling, BSofA remains the appellant in this appeal. WaferTech argues that BSofA's appeal must be dismissed because it is a nonexistent entity. In response, BSofA argues that WaferTech is estopped from raising this issue because it accepted the benefits of its 2002 judgment against BSofA. We must remand because we cannot determine from the appellate record whether BSofA can pursue this appeal. We also reject BSofA's estoppel argument.

1.     Applicability of RAP 3.1

WaferTech argues that BSofA cannot pursue this appeal because it has no legal existence and does not have the capacity to sue (or be sued). Therefore, WaferTech argues that BSofA cannot be an aggrieved party under RAP 3.1. However, the appellate record does not allow us to determine BSofA's legal status. As a result, we must remand to the trial court to make this determination.

---

[5] WaferTech argues that even if the judgment is corrected to name BSA II as the judgment debtor, BSA II could not pursue this appeal under Delaware law because BSA II is a void corporation. We need not address this issue because we affirm the trial court's refusal to correct the judgment by naming BSA II as the judgment debtor.

As a general proposition, WaferTech may be correct that an entity with no legal existence cannot sue or be sued. *See Roth v. Drainage Improvement Dist. No. 5 of Clark County*, 64 Wn.2d 586, 590, 392 P.2d 1012 (1964) (drainage district that was overseen by the local county could not be sued in its individual capacity because the drainage district had no separate existence outside of the local county). But the record does not support WaferTech's contention that BSofA has no legal existence. WaferTech presented evidence that a corporation called Business Services of America II, Inc. has never been registered with the Delaware Division of Corporations. The fact that an entity has never been registered as a corporation in Delaware does not necessarily mean that it has no legal existence. BSofA could be a corporation registered in another state. In addition, even if BSofA is not a valid corporation it may have some other legal status – as a partnership, sole proprietorship, or some other entity – by operation of law. On the other hand, WaferTech may be correct and BSofA may have no legal existence.

Based on the appellate record, we cannot determine BSofA's legal status. The record does not establish whether BSofA does or does not have any legal existence sufficient to allow BSofA to pursue its appeal of the trial court's summary judgment order. Accordingly, we remand this case for the trial court to determine BSofA's legal status and BSofA's ability to pursue its appeal against WaferTech.[6]

---

[6] If BSofA has no legal existence, WaferTech's judgment for attorney fees against BSofA may be meaningless. However, we do not address this issue.

11

2.  Estoppel to Object to BSofA's Legal Status

BSofA contends WaferTech is precluded under judicial estoppel from arguing that BSofA is a non-existent legal entity because WaferTech accepted the benefits of a previous judgment entered against BSofA.[7] We disagree.

"Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Bartley–Williams v. Kendall,* 134 Wn. App. 95, 98, 138 P.3d 1103 (2006). We examine whether the first position was accepted by the court, and "whether assertion of the inconsistent positions results in an unfair advantage or detriment to the opposing party." *First Citizens Bank & Trust Co. v. Harrison,* 181 Wn. App. 595, 600, 326 P.3d 808 (2014). A court's application of judicial estoppel may be inappropriate " 'when a party's prior position was based on inadvertence or mistake.' " *Arkison v. Ethan Allen, Inc.,* 160 Wn.2d 535, 539, 160 P.3d 13 (2007) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).

BSofA argues that judicial estoppel applies because WaferTech benefitted from its failure to object to BSofA's corporate status earlier in the litigation when it obtained a judgment against BSofA for attorney fees and collected on that judgment. We reject BSofA's argument for two reasons. First, WaferTech never took a "position" that BSofA was a legal entity. The issue never arose. In fact, WaferTech specifically denied BSofA's allegations in its second and third

---

[7] BSofA also argues in a footnote that equitable estoppel applies. However, we generally refuse to address arguments raised only in a footnote. *See Norcon Builders, LLC v. GMP Homes VG, LLC,* 161 Wn. App. 474, 497, 254 P.3d 835 (2011); *State v. Johnson,* 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993)). Accordingly, we decline to address this issue.

12

amended complaints that it was a Delaware corporation. To the extent WaferTech took a position, WaferTech's position derived from its reliance on BSofA's own identification of itself. Relying on BSofA's own allegations is not a sufficient "position" to warrant the application of the judicial estoppel doctrine.

Second, BSofA cites no authority for the proposition that once a party collects on a judgment against an entity that is not a registered corporation, it is precluded from later arguing based on newly discovered information that the entity has no legal existence and cannot pursue litigation. In the absence of any authority, we decline to apply judicial estoppel in this situation.

BSofA cannot establish the elements of judicial estoppel. Accordingly, we hold that judicial estoppel does not preclude WaferTech from challenging BSofA's ability to pursue this appeal.

C.    EQUITABLE SETOFF AND ATTORNEY FEES

BSofA argues that the trial court erred in offsetting the $2.4 million M+W settlement against its $1.5 million lien claim, which resulted in summary judgment in favor of WaferTech. BSofA also challenges the trial court's award of $430,000 in attorney fees to WaferTech under RCW 60.04.181(3) as the prevailing party in a lien foreclosure action. Because we remand for the trial court to determine whether BSofA can pursue this appeal, we do not address these issues.

D.    ATTORNEY FEES ON APPEAL

Both BSofA and WaferTech request reasonable attorney fees on appeal based on RCW 60.04.181(3), which allows the prevailing party in a lien foreclosure action to recover attorney fees. WaferTech is the prevailing party on the CR 60(a) appeal, and

13

BSofA is not the prevailing party on this issue. But because we do not address the merits of the trial court's dismissal of the lien foreclosure action, we cannot yet determine which party is the prevailing party of the entire action. Accordingly, we do not award attorney fees to either party.

We affirm the trial court's denial of BSofA's CR 60(a) motion, but we remand for the trial court to determine BSofA's legal status and BSofA's ability to pursue its appeal against WaferTech.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.