

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34886-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CURTIS LEE SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — After Curtis Smith pleaded guilty to the first degree child molestation of his stepdaughter, he requested and was granted a special sexual offender sentencing alternative (SSOSA). Very shortly thereafter, the State moved to amend his judgment and sentence to impose crime-related conditions that had been inadvertently omitted. Finding that the mistake was clerical, the trial court amended the judgment and sentence to include an appendix of standard community custody conditions under the sentencing alternative.

Mr. Smith appeals, arguing the mistake was judicial error and uncorrectable. We disagree and affirm.

FACTS AND PROCEDURAL BACKGROUND

The trial court in this case went along with all parties' request for a SSOSA when it sentenced Mr. Curtis for the first degree child molestation of his stepdaughter, although it expressed reservations at the same time. Ultimately, the court explained that a SSOSA would give Mr. Smith "the opportunity to prove to the community that he can be a productive member of society without reoffending, and he can support his family." Report of Proceedings (RP) at 41. Speaking to Mr. Smith, the court added, "[I]t's going to be a short leash, Mr. Smith. You violate any of these conditions you will be back in doing the full 68 months, do you understand?" *Id.* Mr. Smith responded that he did.

As the court and prosecutor continued to cover procedural aspects of the sentencing alternative, the trial court touched on the fact that the sentencing alternative involved "a number of crime-related prohibitions." RP at 43. The following exchange occurred:

> THE COURT: All right. There is a, there is a number of crime-related prohibitions. They are set forth in the appendices. Actually, I don't see a 4.2 in here.
> [PROSECUTOR]: No. We have attached appendix F.
> THE COURT: Okay. It is included in appendix F?
> [PROSECUTOR]: Yes.
> THE COURT: All right. I'll change that in the form then; it still says 4.2. All right. And I am signing the appendix F.

*Id.*

2

Within days of the sentencing hearing, the prosecutor learned from a representative of the Department of Corrections (DOC) that she had been mistaken, and appendix 4.2 needed to be included in the judgment and sentence to impose conditions contemplated by the State's agreement to the sentencing alternative. The State moved to amend the judgment and sentence, and in a hearing conducted less than two weeks after the sentencing hearing, the prosecutor explained her mistake:

> I thought all the conditions were contained in the body of the Judgment and Sentence which is why I didn't think we needed appendix 4.2 . . . . However, what I didn't realize is those very same conditions that were contained in the body of the Judgment and Sentence . . . were [in] the section of the body of the Judgment and Sentence that were only applicable for a prison sentence, not [a] SSOSA sentence.

RP at 48. She continued to explain that appendix 4.2

> needs to be added to this Judgment and Sentence so Mr. Smith can be adequately supervised. That is also part of the law. . . . We're not adding additional issues that Mr. Smith was not aware of when he changed his plea. This is part of the plea bargain doing these conditions. He is going to be controlled by the Department of Community Corrections and he knows this. This is a standard addendum to the Judgment and Sentence that we enter in every other case.

*Id.* at 48-49.

At a continued hearing (so that Mr. Smith could be present) Mr. Smith argued that the judgment and sentence was final and the State's argument that the appendix was necessary contradicted what it told the court at sentencing. He pointed out that adding appendix 4.2 after the fact subjected him to additional and objectionable limitations,

3

including that he could have no contact with minor children at all (whereas appendix F allowed Mr. Smith to see his son under supervision), and that he would have to stay in Walla Walla County. He argued that if the conditions were truly required, DOC had the authority to impose them. Legally, he contended, any error was judicial error that could not be remedied under CrR 7.8(a).

Although the trial court confirmed with a DOC representative present at the hearing that the DOC could impose the conditions, the State still requested amendment, explaining, "the State and Department would feel more comfortable if this were part of the Judgment and Sentence so we know what the ground rules are." RP at 56. It expressed concern about Mr. Smith later claiming, after being sanctioned, that "the judge didn't say I had to do that." *Id.*

Concluding that the mistake was clerical, the trial court granted the State's motion and amended the judgment and sentence to include the appendix. Mr. Smith appeals.

ANALYSIS

CrR 7.8(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time." "Clerical mistakes" that can be corrected under the rule are to be distinguished from "judicial mistakes," which cannot be. *See State v. Hendrickson*, 165 Wn.2d 474, 479, 198 P.3d 1029 (2009).

The distinction was explained in *Presidential Estates Apartment Associates v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996), a civil case involving the correction of a judgment under a similar rule, CR 60(a):

> In deciding whether an error is "judicial" or "clerical," a reviewing court must ask itself whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial. If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and, therefore, must be judicial.

(Citation omitted). Where the judgment itself was ambiguous, the court held that the trial judge's subsequent statement of his original intent was an acceptable basis on which to resolve the ambiguity. *Barrett*, 129 Wn.2d at 329.

We review the superior court's ruling on the State's motion to amend in this case for abuse of discretion. *State v. Smith*, 159 Wn. App. 694, 699, 247 P.3d 775 (2011). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Dixon*, 159 Wn.2d 65, 75-76, 147 P.3d 991 (2006).

The record of Mr. Smith's sentencing is ambiguous as to the trial court's intent. On the one hand, the court recognized that appendix 4.2 was not attached to the judgment and sentence, asked about it, and then addressed Mr. Smith about the conditions set forth in appendix F, suggesting it might be aware it was imposing different conditions. On the other hand, and more importantly, the trial court expressed reservations about imposing a

No. 34886-5-III
*State v. Smith*

SSOSA at all, but explained that it would do so because a SSOSA was subject to crime-related conditions that would keep Mr. Smith "on a short leash."

Presented with ambiguity, we recognize that the trial court is the best judge of its intention. And here the trial court was presented with the motion to amend right away, making its recollection of its intention especially reliable.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

6