FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT 15 AM 8: 55

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 76754-2-I |
| MELINDA MUCSI, | DIVISION ONE |
| Respondent/Cross Appellant, | UNPUBLISHED OPINION |
| and | |
| BARNA MUCSI, | |
| Appellant/Cross Respondent. | FILED: October 15, 2018 |

APPELWICK, C.J. — Relying on CR 60(a), the trial court on its own initiative amended its final orders dissolving the marriage of Barna and Melinda Mucsi to correct a clerical error. In the amended order, the trial court granted $100,000 of separate equity in the family home to Barna. Because the trial court made a substantive change that was inconsistent with its original findings, not a clerical correction, we reverse and remand to vacate the amended orders.

## FACTS

Melinda and Barna Mucsi met in 1998 when Melinda, who was living in Romania, responded to an advertisement that Barna, who lived in Washington, placed in a newspaper.[1] Barna went to Romania to meet Melinda, and within a month, asked Melinda to marry him. Barna had Melinda sign a prenuptial agreement. They married on July 4, 1999 in Romania. A month later, Barna

---

[1] We use first names for clarity.

brought Melinda to the United States to live in Washington. They had a son in November of 2003.

Melinda and Barna separated in June 2015. The trial court entered a final order dissolving the parties' marriage on February 17, 2017. On March 6, 2017, the trial court denied Barna's motion for reconsideration. On March 24, 2017, relying on CR 60(a), the trial court on its own initiative amended its final orders dissolving the marriage of Barna and Melinda to correct a clerical error.

In its amended findings and conclusions about a marriage, the trial court stated, in part,

1. Basis for findings and conclusions

There was a trial before the Honorable Veronica A. Galvan beginning on January 17, 2017, and ending on January 25, 2017. The court denied the Responden't [sic] motion for reconsideration on March 6, 2017. Subsequently, the court realized a clerical error in determining the value of the home and found that the court's assessment of value was not consistent with the court's findings and pursuant to Civil Rule 60(a) amends the prior findings and conclusions. [2] Specifically, the court found that the original pre-nuptial agreements were valid, but omitted consideration of original equity in the home in determining the communal interest in the home. . . .

. . . .

22. Other Findings or Conclusions

a. Romanian Prenuptial Agreement. At the marriage of the parties, the wife resided in Romania and the husband resided in Shoreline, Washington. The parties executed a prenuptial agreement in the Country of Romania, sometime prior to their marriage in 1999. However, the Exhibit purported to be the agreement (Exhibit No. 201) was not complete, and had no date on it other than the date that it

---

2 The amendments to the original order are underlined.

was translated from English. The wife did understand the nature and terms of the agreement, and understood that the family home would belong to the husband.

b. English Post-nuptial Agreement. The parties executed another marital status agreement on September 8, 1999 wherein the agreement was written entirely in English. At the time, Wife had limited English proficiency. Wife met for the first time a woman lawyer at the signing named Holly Newman who was described to her as her lawyer for this agreement she did not get any other legal advice concerning this agreement.

c. Quitclaim Deeds and Linden Avenue Home. As to the residence of the husband which he owned prior to marriage located on Linden Avenue North in Shoreline, Washington, the wife executed multiple quitclaim deeds in favor of the husband and the court concludes from this that the parties intended the husband should be awarded the house in the event of a dissolution of marriage.

d. Linden Avenue North Family Residence. The parties have resided during all of their marriage in the Linden Avenue North residence which has an agreed fair market value of $575,000 and an encumbrance thereon of $247,000 for a net equity of $328,000. The property is the separate property of the husband, and the court will credit the husband with $100,000 of original equity in the property for a communal net equity of $228,000. The property should be awarded to the husband. However, the community has acquired an interest in the residence as community funds were used to maintain, improve, and pay down the mortgage on the property. It is fair and equitable — particularly in light of the wife's years of uncompensated work in the husband's adult family home business — that she receive one-half of the value of the home minus the husband's original equity of which this court will set at $100,000 and any outstanding mortgages which should also be divided between them. The net equity is $228,000[3] which should be divided equally.

e. Barna's Adult Family Home, LLC. The husband owned an adult family home business prior to the marriage known as

---

[3] The trial court did not indicate that this was a change from the original order, but the record shows that this was an oversight, because in the original order it stated that the net equity was $328,000, not $228,000.

Barna's Family Home LLC. During the course of the marriage, the wife worked for years with little to no compensation for her efforts in this business. The wife's Social Security report shows no income having been paid to her in the years 2000 through 2013. Following the husband's conviction for assault against his son, the license for said business was terminated and the business is no longer operating and has no value. After separation, the wife operated the business until it was closed. She paid herself $45,000 from the business account, she paid her mother who worked there $18,000, and she paid taxes of $14,000 along with other business expenses. The husband should have received $45,000 just like the wife; but he received only $22,000. Hence, he should receive another $23,000 from the wife which should be offset against the $114,000 obligation which the husband owes to the wife for her interest in the family residence, accordingly the wife will receive $91,000 in cash judgment.

(Boldface omitted.)

Barna appeals and Melinda cross appeals.

## DISCUSSION

Barna makes four main arguments on appeal. First, he argues that the trial court's amended findings are inconsistent because they validate the prenuptial agreement and quitclaim deeds, but fail to enforce them. Second, he argues that substantial evidence does not support the court's finding that Melinda was not compensated for her work in the family business. Third, he argues that the court erred in determining his interest in the family home. Fourth, he argues that the court erred in calculating the transfer payment he owes Melinda.

Melinda argues on cross appeal that the trial court erred in amending its final orders under CR 60(a) because it did not correct a clerical error, but made a substantive change that was inconsistent with its original intent. Because the cross appeal is dispositive of the other issues, we address it first.

4

I.  CR 60(a)

Under CR 60(a), a trial court may correct a clerical error, but not a judicial error. Presidential Estates Apartment Assocs. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). Whether an error is clerical or judicial depends on whether "the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." Id. If the amended judgment embodies the trial court's intention, "the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court." Id. If the amended judgment does not embody the trial court's intention, the error is judicial and the court cannot, under CR 60(a), "go back, rethink the case, and enter an amended judgment that does not find support in the trial court record." Id.

We review a decision to modify a prior judgment under CR 60(a) for abuse of discretion. Id. at 325-26. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Melinda contends that when the trial court amended its findings and granted Barna the "original equity" in the house, it was inconsistent with its original intent from the trial record.

In the amended findings, the trial court stated that it was amending its prior findings and conclusions under CR 60(a) because it "realized a clerical error in determining the value of the home and found that the court's

assessment of value was not consistent with the court's findings." And, the trial court stated that it "found that the original pre-nuptial agreements were valid, but omitted consideration of original equity in the home in determining the communal interest in the home." The trial court then credited Barna with $100,000 of original equity in the house in which both parties lived during the marriage. In the original findings and conclusions the trial court found,

> The parties executed a prenuptial agreement in the Country of Romania, sometime prior to their marriage in 1999. However, the Exhibit purported to be the agreement (Exhibit No. 201) was not complete, and had no date on it other than the date that it was translated from English. The wife did understand the nature and terms of the agreement, and understood that the family home would belong to the husband.

And, in regards to the post-nuptial agreement, the trial court found,

> The parties executed another marital status agreement on September 8, 1999 wherein the agreement was written entirely in English. At the time, Wife had limited English proficiency. Wife met for the first time a woman lawyer at the signing named Holly Newman who was described to her as her lawyer for this agreement she did not get any other legal advice concerning this agreement.

And, regarding the family home, the trial court found,

> The parties have resided during all of their marriage in the Linden Avenue North residence which has an agreed fair market value of $575,000 and an encumbrance thereon of $247,000 for a net equity of $328,000. The property is the separate property of the husband. The property should be awarded to the husband. However, the community has acquired an interest in the residence as community funds were used to maintain, improve, and pay down the mortgage on the property. It is fair and equitable—particularly in light of the wife's years of uncompensated work in the husband's adult family home business—that she receive one-half of the value of the home minus any outstanding mortgages which should also be divided between them. The net equity is $328,000 which should be divided equally.

6

The record shows that the trial court did not originally intend to award separate equity in the home to Barna. In denying Barna's motion for reconsideration, the trial court stated,

2. Mr. Mucsi asserts that the court has erred in calculating the husband's separate property interest in the family residence. The court understands Mr. Mucsi's argument as to the family residence, but he is ignoring the court's conclusion that based on all the facts and circumstances of the marriage it would be equitable for the wife to receive a one-half interest in the equity of the residence, reduced by $23,000 which the court found wife owed husband. Further, the court is not required to determine values and distribution with mathematical precision. Rather, the court's duty is to determine a fair and just property division.

3. The court further finds that even if Mr. Mucsi were correct in his calculations of his separate property interest in the residence, it is this court's determination that the wife should still receive the interest which the court awarded to the wife in the Final Divorce Order. Such a decision is fair and equitable.

This court has held that the trial court cannot, under CR 60(a), modify a judgment for an error in the legal description of properties, because it does not constitute a clerical mistake. Foster v. Knutson, 10 Wn. App. 175, 175-77, 516 P.2d 786 (1973). In Foster, the trial record showed that the description of the property had been in an exhibit and in the complaint, and the plaintiff had stipulated that the description contained the only properties being foreclosed. Id. at 176. This court held that it was a substantive issue, rather than a mechanical mistake, and that the trial court could not modify the judgment under CR 60(a). Id. at 176-77.

And, this court held that a trial court cannot, under CR 60(a), reapportion a military pension after entering a final dissolution decree that did not distribute

the pension in Barros v. Barros, 26 Wn. App. 363, 366, 613 P.2d 547 (1980). In Barros, the trial court entered a decree dissolving the parties' marriage. Id. at 364. In the court's oral ruling, it stated that the husband's military pension was to be awarded to the husband, but neither the findings of fact nor written decree mentioned the pension. Id. After the husband's death, a representative of the husband's estate moved for an "'order nunc pro tunc correcting the divorce decree and granting to [the husband] the retirement and military fund as per the court's previous oral ruling.'" Id. The trial court granted the motion. Id. On appeal, this court held that the alleged error was not a "clerical error." Id. at 366. It stated, "The mistake, if such did occur, was the result of a trial court's failure to dispose of the military pension and not the result of clerical misprision." Id. Accordingly, this court vacated the order. Id.

Here, in the original order, the trial court concluded that it was "fair and equitable" to give each party "one-half of the value of the home." Then in the order denying Barna's motion for reconsideration, the trial court rejected Barna's claim for separate equity and reiterated that equally dividing the interest in the home was "fair and equitable." But, when the trial court amended its original findings and conclusions, granting $100,000 of separate equity to Barna, it made a substantive change. Under Foster and Barros, when the trial court granted separate equity to Barna in its amended order, it did not correct a "clerical error." Thus, the trial court abused its discretion in amending its findings and conclusions under CR 60(a) and granting $100,000 of separate equity to Barna.

Barna did not appeal from the original order or denial of his motion for reconsideration.[4] Barna's appeal assigns errors to only the trial court's amended final orders. Because we are vacating the amended orders, we do not address Barna's arguments on appeal.

## II.  Attorney Fees

Melinda argues that this court should award her attorney fees on appeal. RCW 26.09.140. We find that the trial court abused its discretion under CR 60(a) when it amended the findings and conclusions and reduced Melinda's property award. We therefore award Melinda her attorney fees on appeal subject to compliance with RAP 18.1.

We reverse and remand to vacate the amended orders and reinstate the original findings and decree.

WE CONCUR:

---

[4] Barna filed this appeal on April 21, 2017. That is more than 30 days after the court entered the order denying Barna's motion for reconsideration of the original order. And, Barna conceded at oral argument that he was appealing only the amended order, and that he "didn't appeal the first order."