IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| JENNIFER LYNN HART, | No. 50350-6-II |
| Respondent, | |
| v. | |
| ERIN FREEDOM HAWTIN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — After a superior court commissioner issued a final order for protection against Erin Hawtin, a superior court judge, who disagreed with the decision, sua sponte convened two hearings, temporarily staying a portion of the final order (the April 6 order) and, ultimately amending the final order for protection, including changing the commissioner's findings of fact (the April 14 order).  Hawtin argues that (1) the judge lacked the judicial authority to sua sponte issue either order, (2) the hearings violated his right to due process, (3) the hearings caused the Domestic Violence Prevention Act[1] (DVPA) to be unconstitutionally applied to him, (4) the hearings violated his right to equal protection, (5) the hearings were a prior restraint on his First Amendment rights, (6) the trial court erred in rejecting Hawtin's motion and affidavit of prejudice, and (7) the judge violated the Code of Judicial Conduct (CJC) and should have recused herself.

Jennifer Hart argues that issues arising from the first hearing are moot.

We hold that (1) issues arising from the first hearing are not moot, (2) the judge acted without judicial authority when she sua sponte issued both orders, and (3) the hearings violated

---

[1] Chapter 26.50. RCW.

Hawtin's right to due process. We do not reach the remainder of Hawtin's arguments.

Accordingly, we reverse the April 6 order and reverse and vacate the April 14 order.

FACTS

Jennifer Hart petitioned the Thurston County Superior Court for an order for protection against her former boyfriend, Erin Hawtin.[2] After a full evidentiary hearing, Commissioner Pro Tem Kratz, entered a final order for protection against Hawtin on April 5, 2017. The final order for protection had check boxes for the judicial officer to make findings regarding the relationship of the parties. Commissioner Kratz checked the box finding that Hart and Hawtin had a "current or former dating relationship," and did not check the box that Hawtin was a "current or former cohabitant as intimate partner." Clerk's Papers (CP) at 85. The order also stated that Hawtin had committed domestic violence and represented a credible threat to Hart's safety. As a result, the order restrained Hawtin from causing harm to Hart through injury, assault, harassment, threats, or stalking.

The final order also ordered Hawtin's firearms be returned to him. During the hearing, Commissioner Kratz stated:

> I want to handle the issue about the fear of firearms that [Hart] is asserting. I don't find that to be credible. The fact that [Hart was] going to buy a pistol for [Hawtin] and . . . [that Hart asked Hawtin] to help assemble an AR-2 . . . . I don't believe that rings true that [Hart] is actually fearful of firearms in the possession of [Hawtin].

Verbatim Report of Proceedings (VRP) (April 5, 2017) at 119-20. The commissioner further stated:

> I am not putting any restrictions on [Hawtin] as far as firearms.
> . . . .

---

[2] Hart petitioned for this domestic protection order on January 30, 2017, shortly after she was arrested for assaulting Hawtin on January 26, 2017.

> There is a statute under the State of Washington that provides that if the court finds that there is a credible threat that a domestic violence abuser would use firearms, that I can authorize that they be surrendered to law enforcement and that his right to possess firearms would be terminated. I'm not finding that in this particular case.

VRP (April 5, 2017) at 125-27. This final order was to be in effect for one year.

The following morning, April 6, Hawtin's attorney's office received a call from the Thurston County Superior Court stating that Hawtin and his attorney were to be present at a hearing that afternoon regarding the final order. Judge Hirsch presided over this hearing. There, Judge Hirsh stated that the clerk and another commissioner alerted her that there "is an error" in Commissioner Kratz's order. VRP (April 6, 2017) at 3.

Judge Hirsch, before permitting either party to make arguments, stated, "I am going to allow the protection order to stay in place, but I'm going to issue a stay of the return of the firearms." VRP (April 6, 2017) at 4. She further stated that the order was in conflict with Hart's petition,

> and given that the federal law doesn't allow there to be firearms once a protection order is issued in certain circumstances—and there are some limitations in the state law—the Court felt that it was necessary for community safety purposes to be able to address it in this way. Obviously, it's not the best way to have things be addressed, but given the potential issues, the Court on its own motion wanted it brought back today.

VRP (April 6, 2017) at 4-5.

Hawtin's counsel objected to the procedure of the hearing, stating that the statutory procedure for revision of a commissioner's order was not being followed and that the hearing violated due process. Judge Hirsch responded:

> THE COURT: I understand all of that, counsel, and the reason that I'm setting it over is to give everybody an opportunity in weighing the—excuse me. I'm going to finish because I told you we're just having a moment here.
>     You're raising quite valid and important points. The Court doesn't have any ability today to address them. Given the safety issues that the Court believes

may potentially be at issue, in balance I think it's an appropriate ruling. I'm happy to have you raise those arguments, but I'm going to stay the firearms return.

[HAWTIN'S COUNSEL]: May I finish my record?

THE COURT: You can do your record in writing. You've raised due process issues.

[HAWTIN'S COUNSEL]: And I also have a—

THE COURT: Counsel. You raised your due process issues. You can brief the issue for the Court. I'll set it as soon as I—counsel, if you interrupt me one more time, we're going to be having some issues.
     I'm going to stay the firearms provisions. I believe that there are community safety issues at risk. The due process issues and the other issues you raised, counsel, are important, but on balance the Court is going to keep its ruling with respect to the firearm issue only. The order that was entered otherwise is going to remain in place.

VRP (April 6, 2017) at 6-7.

Judge Hirsch then issued an order stating that the court had jurisdiction, that the court believed the April 5 order may contain a scrivener's error, that the return of Hawtin's firearms would be stayed, and that a hearing would be held on April 14, 2017 in front of Judge Hirsch.

On April 10, Hawtin filed a motion to correct a clerical mistake, or, in the alternative, motion to reconsider with Commissioner Kratz. Hawtin argued that unchecking one of the boxes would make clearer that Hawtin is allowed to retain his firearms. Hawtin also filed a motion and affidavit of prejudice against Judge Hirsch. Then, based on that motion and affidavit, Hawtin filed a pleading entitled "Objections to Hearing" regarding the hearing scheduled for April 14. CP at 103.

On April 11, the superior court issued an order rejecting Hawtin's motion and affidavit of prejudice noting simply that an affidavit of prejudice "is not applicable at this time." CP at 109. The court did not make any findings.

Judge Hirsch presided over the hearing on April 14. Hawtin's counsel renewed his procedural objections and argued that he was not sure of the nature of the error the court was concerned about because there had been no motions or briefs filed prior to the hearing. Further, he argued that Commissioner Kratz was the proper judicial officer to hear the matter. Hart then identified the alleged error: that Commissioner Kratz checked the "current or former dating relationship" box on the order for protection form instead of the "current or former cohabitant as intimate partner" box that she checked on her petition. VRP (April 14, 2017) at 9-10. Judge Hirsch stated:

> I can appreciate that that is awkward and uncomfortable. That's why earlier this week I came in and made the record I did, and I am just going to make a couple of findings and we are going to figure out a way to go forward with this.
>
> First of all, [Hawtin's counsel], I think you're correct that it's not typical for the Court to on its own motion address a matter that this Court didn't hear. You are correct about that. The clerk, as I indicated on the record very briefly the other day, brought to the Court's attention that she believed there was an error in the order. I tried to be as clear as I could with what I knew at that time on the record because it is unusual, but my understanding is that that is the job of the clerks, to make sure that orders are entered appropriately, and it was her statement to me, as I indicated on the record, that she believed there was a scrivener's error and that one of the boxes that should have been checked was not checked. . . .
>
> . . . Today, the Court is not in any position to address credibility because I don't think that both of the sides have had an opportunity to fully address that, and I am not going to be addressing any credibility issues today.
>
> In any event, it is the clerk's job, according to my understanding of their statutory duties, to check orders for completeness and accuracy before they file them and/or send them on to law enforcement. . . .
>
> . . . [T]he critical point, frankly, is the community safety concern that the Court had when firearms are at issue, and I had not at that time looked at the court file; I have in preparing for the hearing today. I looked at everything that was in the court file. . . .
>
> Under federal law, once a protection order is entered—and the Commissioner did make a finding that there was an act or acts of domestic violence sufficient to enter a domestic violence protection order. Once that finding has been made and an order has been entered, by virtue of federal law [Hawtin] does not have the right to own or possess or have under control firearms or a concealed weapons permit or any ammunition. That is nothing that this Court has any control over. That is all by virtue of federal law.

What I see as the sort of challenge in this case procedurally is that we have a state law that addresses surrender of firearms, and that made this case complicated, I think, for reasons that I can't get into and will not get into because none of that was presented to the Court either initially when the Court entered the surrender order or later when Commissioner Pro Tem Kratz addressed the return issue.

. . . .

The Court has concerns that the Court doesn't have the ability to address Mr. Hawtin's firearms rights because by virtue of federal law he doesn't have any.

VRP (April 14, 2017) at 17-20.

Judge Hirsch concluded her ruling by stating:

The Court is not going to allow firearms to be returned to [Hawtin] at this time. You can set any matter you want to be set and addressed in front of the Commissioner so that he can make whatever adjustments that he feels may be appropriate under the law. He entered a domestic violence protection order. [Hawtin] has no right to own or possess firearms.

The Court is continuing the stay of the return of any firearms to [Hawtin.] You can proceed as you wish with other matters, either one of you or both of you, but I'm going to enter an amended order today that includes the stay.

VRP (April 14, 2017) at 21-22.

On May 11, Hawtin filed his notice of appeal. Hawtin appeals the orders issued on "April 5, 6, 7, and 14, 2017."[3] CP at 119.

After filing his notice of appeal, Hawtin continued attempting to clarify the order for protection with hearings in front of Commissioner Kratz on April 24, June 28, and September 21. Commissioner Kratz denied all of Hawtin's requests to correct any mistake in the order or reconsider the order noting that Judge Hirsch's amended order was final and he had no authority to overrule a superior court judge. During the June 28 hearing, Commissioner Kratz stated, "I personally talked with Judge Hirsch, and Judge Hirsch said that there's no basis for me to go

---

[3] Because Hawtin attached the order denying his motion and affidavit of prejudice to his notice of appeal and fully briefed the issue, we presume Hawtin meant to include April 11 as well, which is the date for the order denying the motion and affidavit of prejudice.

back and change anything on that order because it is the law of the case for the amended protection order." VRP (June 28, 2017) at 9. Accordingly, Commissioner Kratz declined to make any rulings on the case.

## ANALYSIS

Hawtin argues that Judge Hirsch lacked the authority to intervene in the case, and that he suffered a violation of his due process rights. Hart argues that issues arising out of the April 6 hearing are moot because the stay was temporary. We hold that issues pertaining to the April 6 hearing are not moot, Judge Hirsch lacked authority to sua sponte intervene, and her intervention and resulting orders violated Hawtin's due process rights.[4]

### I. MOOTNESS REGARDING APRIL 6 SUA SPONTE HEARING AND TEMPORARY ORDER

As an initial matter, Hart contends that Hawtin's arguments regarding the April 6 hearing are moot. Although we cannot grant effective relief to Hawtin regarding this temporary order, we hold that the improper procedure used here to intervene in a commissioner's decision is of continuing and substantial public interest.

An issue is moot if the court can no longer provide effective relief. *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995). Moreover, a final judgment renders the propriety of a temporary order moot. *State v. Noah*, 103 Wn. App. 29, 43, 9 P.3d 858 (2000).

Nonetheless, we may consider a moot case if it involves "matters of continuing and substantial public interest." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512

---

[4] Hawtin also argues that DVPA was unconstitutionally applied, his right to equal protection was violated, there were prior restraints on his First Amendment rights, the trial court erred in rejecting his motion and affidavit of prejudice, and Judge Hirsch violated the CJC. We find the first three issues dispositive and, thus, do not reach these issues.

(1972). In determining whether a case presents an issue of continuing and substantial public interest, we consider (1) the public or private nature of the issue, (2) whether guidance on the issue is needed, and (3) whether the issue presented is likely to recur. *Blackmon v. Blackmon*, 155 Wn. App. 715, 720, 230 P.3d 233 (2010).

Here, because Judge Hirsch issued an amended final order for protection on April 14 superseding any temporary orders, Hawtin's objections to the April 6th hearing are technically moot. However, the issue is of continuing and substantial public interest because this is a public issue needing guidance, and the issue is likely to recur. Although this is a private proceeding between Hawtin and Hart, there is a public issue regarding the processes used in domestic violence order for protection hearings. Furthermore, the apparent procedures in Thurston County of clerks alerting judges to judicial decisions they disagree with, and the sua sponte judicial intervention on final orders, have the potential to undermine the integrity of the legal system. As a result, guidance is needed for this procedural issue because, without clarity, this issue is likely to arise again. Moreover, we consider the total procedural history of this case because the hearings are intertwined.

## II. LACK OF JUDICIAL AUTHORITY FOR THE SUA SPONTE HEARINGS AND ORDERS

Hawtin argues that Judge Hirsch did not have the authority to sua sponte issue the April 6 and April 14 orders following the commissioner's final order. Specifically, he argues that no such authority exists in the revision statute, the DVPA, the civil rules or the local rules. We hold that Judge Hirsch acted without authority when she revised the commissioner's April 5 final order for protection.

"A judicial officer is a person authorized to act as a judge in a court of justice. Such officer shall not act as such in a court of which he or she is a member . . . [w]hen he or she was

not present and sitting as a member of the court at the hearing of a matter submitted for its decision." RCW 2.28.030(2); *Jaime v. Rhay*, 59 Wn.2d 58, 61, 365 P.2d 772 (1961). Without procedural authority, a judicial officer's actions are void. *See Swan v. Landgren*, 6 Wn. App. 713, 717, 495 P.2d 1044 (1972).

Here, Judge Hirsch was not "present and sitting" as the judicial officer at the evidentiary hearing for which she rendered the ultimate decision. Thus, unless she was acting with some judicial power granted to her by statute, rule, common law, or the constitution, then her rulings altering the disposition of the case following Commissioner Kratz's order would be void. The record is unclear as to the legal authority Judge Hirsch relied on to sua sponte revise the orders. We do not address all the possible sources of judicial authority, but consider only the sources of authority briefed by the parties.

A.      *Principles of Statutory and Rule Construction*

We review interpretation of a statute de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. In determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning. *Jametsky*, 179 Wn.2d at 762. Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we give the term its plain and ordinary meaning as defined in the dictionary. *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004) (plurality opinion). In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

If there is more than one reasonable interpretation of the plain language, the statute is ambiguous. *Jametsky*, 179 Wn.2d at 762. When a statute is ambiguous, we resolve ambiguity by engaging in statutory construction and considering other indications of legislative intent. *Jametsky*, 179 Wn.2d at 762. However, if the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. *Jametsky*, 179 Wn.2d at 762.

We review the interpretation of a court rule de novo and in the same manner as we review statutes. *North Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016). We give effect to the plain meaning of a rule as an expression of the drafter's intent. *Guardado v. Guardado*, 200 Wn. App. 237, 243, 402 P.3d 357 (2017). If a rule is ambiguous, we read the rule as a whole, harmonizes its provisions, and consider related rules to discern the rule's intent. *Guardado*, 200 Wn. App. at 243.

B. *Revision under RCW 2.24.050*

Hawtin argues that Judge Hirsch did not have authority to review Commissioner Kratz's order under the revision statute without a motion. We agree.

Decisions by a superior court commissioner are subject to the review of the superior court under RCW 2.24.050. That statute allows parties to seek revision by filing a motion within ten days of the commissioner's ruling:

> All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner, and unless a demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, the orders and judgments shall be and become the orders and judgments of the superior court, and appellate review thereof may be sought in the same fashion as review of like orders and judgments entered by the judge.

RCW 2.24.050. A court acting under its revision power has full jurisdiction over the case and its review is "essentially unlimited." *In re Dependency of B.S.S.*, 56 Wn. App. 169, 171, 782 P.2d 1100 (1989). As plainly set forth in the statute, a *party to an action* must move for a revision within ten days of the commissioner's ruling. *In re Marriage of Robertson*, 113 Wn. App. 711, 714, 54 P.3d 708 (2002). If a party does not timely move for revision, then the only avenue for reviewing the commissioner's ruling would be through the appeal process. *Robertson*, 113 Wn. App. at 714.

Here, neither party moved for revision under RCW 2.25.050.[5] The superior court sua sponte called the parties before it following the commissioner's entry of a final order for protection. Accordingly, this statute did not vest Judge Hirsch with authority to revise the commissioner's order.

C.      *Review of a Final Order For Protection under the DVPA*

Hawtin argues that Judge Hirsch did not have authority to review Commissioner Kratz's order under the DVPA. We agree.

RCW 26.50.130(1) provides, "Upon a motion with notice to all parties and after a hearing, the court may modify the terms of an existing order for protection or may terminate an existing order for protection." The remaining sections describe the responsibilities of the trial court as well as the required evidence for modification or termination of an order for protection.

---

[5] At oral argument, Hart argued that that the April 5 order was erroneous because the finding of fact that the parties were not cohabitating was not contested and because there was no evidence to support a finding other than that they were cohabitating. But if a party believes a commissioner's finding is not supported by the evidence, then that party's avenue of relief is either a motion for revision or an appeal. *See* RCW 2.25.050; *Robertson*, 113 Wn. App. at 714.

RCW 26.50.130(2)-(7).  The statute describes procedures for modification and termination, but does not provide for a court initiated modification.  RCW 26.50.130(2)-(7).

This statute does not appear to allow sua sponte review or modification of a final order. Accordingly, Judge Hirsch could not have been correcting an error in the order for protection under the authority granted by RCW 26.50.130 because there was no motion from either the petitioner or respondent in the action and there were no motions to modify or terminate the order.

D.    *Authority under Civil Rules and Thurston County Local Rules*

Hawtin argues that Judge Hirsch did not have authority to review Commissioner Kratz's order under the civil rules or the Thurston County local rules.  We agree.

1.  *Reconsideration under Civil Rule 59 and Local Rules 94.14 and 59*

In Thurston County, LSPR 94.14 notes that motions for reconsideration for family law matters are subject to LCR 59.  LCR 59 states that moving parties must comply with CR 59.  CR 59 allows for new trials, reconsideration, and amendments of judgments.

"Under CR 59(d), a trial court may order a new trial on its own initiative for any reason that it might have granted a new trial on the motion of a party."  *Estate of Stalkup v. Vancouver Clinic, Inc., P.S.*, 145 Wn. App. 572, 583, 187 P.3d 291 (2008).  A plain reading of CR 59(d) reveals that the rule is premised on the concept that the trial court ordering a new trial possesses the authority to grant one if a party had raised such a motion.  As a result, this rule does not allow a superior court judicial officer to order a new trial on its own initiative simply because that judicial officer disagrees with another judicial officer's decision.  Judge Hirsh did not have authority to enter new orders in this case under CR 59.

Moreover, Judge Hirsch did not grant the parties a new trial or new evidentiary hearing. Instead, she modified a final order without allowing Hawtin to argue or even make a complete

record, and then, without taking any additional testimony, entered a new final order for protection.[6]

CR 59(g) allows a trial court to reopen a judgment on the motion for a new trial. Here, however, there was no motion for a new trial and Judge Hirsch did not grant a new trial or new evidentiary hearing, so CR 59(g) is inapplicable. Accordingly, CR 59 did not bestow authority on Judge Hirsch to enter new orders in this case.

2. *Correction of Clerical Errors under Civil Rule 60(a)*

Judge Hirsch's April 6 order states that the court acted because "there may be a scrivener's error in the Order for Protection" from April 5. CP at 91. Hawtin argues that CR 60(a) does not allow Judge Hirsch to correct the "error" in this manner. We agree because this was not a clerical mistake, and, thus could not be corrected as a scrivener's error.

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party. . . ." CR 60(a). This rule permits the correction of clerical errors, not judicial errors. *Presidential Estates Apt. Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). Whether an error is clerical or judicial depends on whether "the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." *Presidential Estates*, 129 Wn.2d at 326. If the amended judgment embodies the trial court's intention, "the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court." *Presidential Estates*, 129 Wn.2d at 326. If the amended judgment does not embody the trial court's intention, the error is judicial and the court cannot,

---

[6] The only argument at the final hearing concerned whether Judge Hirsch could conduct the proceeding in the absence of proper procedures.

under CR 60(a), "go back, rethink the case, and enter an amended judgment that does not find support in the trial court record." *Presidential Estates*, 129 Wn.2d at 326. "Whether a trial court intended that a judgment *should have a certain result* is a matter involving legal analysis and is beyond the scope of CR 60(a)." *Presidential Estates*, 129 Wn.2d at 326 n.5.

Federal law prohibits the possession of firearms when the court restrains the party from causing harm, harassing, threatening, or stalking, and the relationship between the parties is as "former or current cohabitant[s] as intimate partner[s]." 18 U.S.C. § 922(g)(8); CP at 86. Federal law differentiates between "intimate partners" and "dating partners." 18 U.S.C. § 2266 (7), (10). Under federal law, "intimate partners" are treated the same as spouses while "dating partners" refers to a social relationship that is romantic or intimate in nature. 18 U.S.C. § 2266 (7), (10). A fact finder considers the length of the relationship, type of relationship, and the frequency of interactions between the partners to determine the classification of the relationship. 18 U.S.C. § 2266 (7), (10). Specific to the firearms provisions, an "intimate partner" includes "the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabitated with the person." 18 U.S.C. 921(a)(32). As a result, if a court does not factually determine that there was an intimate partner relationship, the firearm restrictions of 18 U.S.C. § 922(g)(8) are inapplicable.

Similarly, state law requires a court to order the surrender of a firearm when certain conditions are met. RCW 9.41.800. Relevant here, when an order under RCW chapter 26.50 is issued following a hearing and that order (1) "[r]estrains the person from harassing, stalking, or threatening an intimate partner of the person," (2) finds "that the person represents a credible threat to the physical safety of the intimate partner," and (3) "[b]y its terms, explicitly prohibits the use, attempted use, or threatened use of physical force against the intimate partner," then the

court shall require that person to surrender all firearms for the duration of that order. RCW 9.41.800(3).

The DVPA has defined "dating relationship" consistent with federal law. A dating relationship is "a social relationship of a romantic nature" and a court considers the same factors as federal law: length of relationship, type of relationship, and frequency of interactions between the partners. RCW 26.50.010(2). However, neither the DVPA nor the weapons surrender statute has independently defined "intimate partners." *See* RCW 26.50.010; RCW 9.41.800.[7] Accordingly, state law requires the removal of firearms when a court order meets the statutory prongs of RCW 9.41.800(3), including that the relationship between the parties is as intimate partners.

Here, Commissioner Kratz found that Hart and Hawtin were in a "current or former dating relationship." CP at 85. Although the order for protection contains a box entitled "current or former cohabitant as intimate partner," the commissioner did not check that box and, thus, did not find that the parties were intimate partners or that they cohabitated. Further, Commissioner Kratz also found that there was not a credible threat to Hart regarding firearms, and ordered the return of all firearms, not just those necessary for Hawtin's military employment. The record is clear that Commissioner Kratz intended Hawtin to be able to possess firearms—which would not have been possible had he found that the parties cohabitated as intimate partners.

---

[7] RCW 9.41.040(8) defines intimate partners, but this definition is explicitly constrained to that section. It states that an "intimate partners" includes "[a] spouse, a domestic partner, a former spouse, a former domestic partner, a person with whom the restrained person has a child in common, or a person with whom the restrained person has cohabited or is cohabitating as part of a dating relationship." RCW 9.41.040. We need not consider whether it would apply this definition because, even if applicable, Commissioner Kratz made no findings of cohabitation, though some evidence of it was presented.

Based on Commissioner Kratz's finding that the parties were in a dating relationship (as opposed to cohabitating intimate partners), he fashioned equitable relief which gave Hart the order for protection she sought while returning firearms to Hawtin. Facially, the order contained no error. Judge Hirsch believed, based on Hart's petition, that Commissioner Kratz incorrectly designated the parties' relationship. But a party's petition is not conclusive evidence. A trial court is required to make findings of fact based on the evidence presented and submitted during a hearing. Because there was no finding that the parties were intimate partners who cohabitated, neither state nor federal laws prohibiting Hawtin to possess firearms were implicated.

It is a question of fact whether Hart and Hawtin were "intimate partners" under state and federal laws. Judge Hirsch stated that Commissioner Kratz had made a clerical or scrivener's error. However, the error she describes is not a clerical or scrivener's error; it is a judicial error because Commissioner Kratz's intention was clear in the record. Further, Judge Hirsch made clear her opinion that this case should have had a specific result different from the April 5 order. Accordingly, because any error here would have been judicial, not clerical or scrivener's, CR 60(a) is inapplicable to Judge Hirsch's actions. She did not possess the authority to sua sponte correct what she believed was an erroneous finding of fact regarding the nature of Hart and Hawtin's relationship.

3. *Staying Judgments under Civil Rule 62(b)*

CR 62(b) allows a court to stay the enforcement of a judgment pending the resolution of a "motion for a new trial or to alter or amend a judgment made pursuant to rule 59, or of a motion for relief from a judgment or order made pursuant to rule 60 . . . ." CR 62(b). Here, when Judge Hirsch intervened, there was no motion under either CR 59 or CR 60. As a result, Judge Hirsch could not have been acting with authority from CR 62(b).

16

E.      *Inherent Equitable Power of the Court*

In her brief, Hart argues that the trial courts have broad discretion to provide equitable remedies. Hawtin argues that Judge Hirsch did not have authority to review Commissioner Kratz's order through inherent powers of judicial equity. We agree with Hawtin.

Cases addressing petitions for orders of protection are cases in equity. *Blackmon*, 155 Wn. App. at 721. In equity, a judicial officer "'may fashion broad remedies to do substantial justice to the parties and put an end to litigation.'" *Hough v. Stockbridge*, 150 Wn.2d 234, 236, 76 P.3d 216 (2003) (quoting *Carpenter v. Folkerts*, 29 Wn. App. 73, 78, 627 P.2d 559 (1981)).

Hart cites *Hough* to argue that the trial court had inherent authority to modify this final order. But that case is distinguishable. In *Hough*, the court issued mutual antiharassment orders on its own motion, though only one party petitioned the court for such an order. *Hough*, 150 Wn.2d at 235. Our Supreme Court found that the trial court, after presiding over the hearing, had the equitable power through our state constitution and by statute to grant mutual relief. *Hough*, 150 Wn.2d at 236. There, the applicable statute granted "broad discretion to grant such relief as the court deems proper." RCW 10.14.080(6); *Hough*, 150 Wn.2d at 236.

Unlike *Hough*, Judge Hirsch did not preside over the evidentiary hearing that resulted in the April 5 final order. In fact, Judge Hirsch conducted no evidentiary hearing. *Hough*'s decision rests on the proposition that when a court acts as a fact finder, it has broad discretion to grant proper relief. *Hough*, 150 Wn.2d at 236. Although courts retain equitable power to fashion remedies, we do not extend the holding in *Hough* to a situation where one judicial officer changed the legal decision of another judicial officer because she disagreed with the result.

Judge Hirsch mentioned multiple times that she was intervening in this action for community safety concerns. However altruistic the intention, this safety concern alone did not

grant her authority, equitable or otherwise, to modify the final court order. Without the request from either party, Judge Hirsch did not have the authority to sua sponte stay or modify the commissioner's final order because she disagreed with the commissioner's ruling. We hold that Judge Hirsch acted without proper authority when she entered a new order for protection.

Accordingly, we hold that Judge Hirsch acted without any legal authority when she intervened sua sponte following the entry of the final order for protection. As a result, her April 6 and April 14 orders are void.

### III. DUE PROCESS

Hawtin argues that his right to due process was violated at both the April 6 and April 14 hearings. We agree.

Due process fundamentally requires "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Aiken v. Aiken*, 187 Wn.2d 491, 501, 387 P.3d 680 (2017) (internal quotation marks omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Because due process is a flexible concept, the necessary level of procedural safeguards can vary. *Aiken*, 187 Wn.2d at 501. Accordingly, we apply the *Mathews v. Eldridge* balancing test to evaluate the process due and consider (1) a person's private interest that is impacted by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the governmental interest, including the burdens additional procedural protections would cause. 424 U.S. at 335.

The procedures for modifying or terminating a final order for protection provide due process protections for both the petitioner and the respondent. RCW 26.50.130; *Gourley v. Gourley*, 158 Wn.2d 460, 468-69, 145 P.3d 1185 (2006). The statute states, "Upon a motion

with notice to all parties and after a hearing, the court may modify the terms of an existing order for protection" and "a motion to modify or terminate an order for protection must be personally served on the nonmoving party not less than five court days prior to the hearing." RCW 26.50.130(1), (7).[8] Further, the removal of firearms is an interest protected by RCW 9.41.800 and U.S.C. § 922(g), each of which requires that the order for protection be issued after actual notice and an opportunity to participate.

A.      *Process of April 6 Hearing and Stay*

Considering the first *Mathews* factor, the April 6 hearing did not adequately consider Hawtin's private interest. Here, Judge Hirsch stayed the return of Hawtin's firearms. She did this without taking evidence or even considering the evidence that was presented at the April 5 hearing. She overlooked Commissioner Kratz's finding that there was no credible threat to Hart regarding firearms and imported her subjective concern for community safety. Further, Hawtin had a fundamental right to possess his firearms under the April 5 final order. Because this hearing stayed the return of property to which Hawtin had a fundamental right to possess, the balancing test weighs in favor of more procedural protections for Hawtin's private property interest than were provided here.

The morning after Commissioner Kratz entered the final order, Hawtin's counsel's office received a phone call from the court. Counsel was informed of the sua sponte hearing in front of Judge Hirsch. The record does not contain a motion from the judge or any other information indicating that Hawtin's attorney was informed of the reason the parties were being called into court.

---

[8] Hawtin does not contest the provisions of the DVPA as facially violating due process. Rather, he contends that what Judge Hirsch did was not in accordance with the DVPA and related statutes.

Considering the second *Mathews* factor, during the April 6 hearing, Hawtin was not given a meaningful opportunity to be heard. Judge Hirsch stated that she had already determined that she was staying the return of the firearms before hearing any argument from the parties. When Hawtin's counsel attempted to make a record concerning his objections to the perceived due process violations, Judge Hirsch cut him off, told him to make his record in writing, and immediately concluded the hearing by staying the return of Hawtin's firearms. Here, the fundamental due process requirement that a party be meaningfully heard was cast aside. The DVPA, revision statute, and court rules all provide remedies for altering or considering final orders. These legal procedures were not followed, meaning that this factor balances towards a due process violation.

Considering the final *Mathews* factor, we examine the governmental interest, including the burden of additional procedures. Here, Judge Hirsch relies on the "community safety concern" of returning these firearms to Hawtin to justify the stay. This concern has little support in the record. Commissioner Kratz explicitly found that there was not a credible firearm threat of harm to Hart. Although a court has authority to order that an individual must temporarily surrender their firearms, the court must find that an affidavit or other evidence supports a conclusion that irreparable injury would occur if that individual was returned the firearms. *See* RCW 9.41.800(4).

Judge Hirsch did not consider any affidavit, or any evidence at all, when she determined that community safety concerns required the stay. Further, she did not make any findings based on evidence to support the community safety concerns. Accordingly, after conducting the *Mathews* balancing test, we hold that Judge Hirsch's sua sponte hearing and stay of the return of the firearms on April 6 did not provide Hawtin with the process he was due.

B.      *Process of April 14 Hearing and Amended Final Order*

Considering the first *Mathews* factor for the April 14 hearing, Hawtin again had a private interest in the return of his firearms. Similar to the April 6 hearing, Judge Hirsch did not take any evidence but did, however, say that she reviewed the court file. Judge Hirsch heard only procedural arguments from the parties. She did not address evidence or credibility of evidence from the April 5 hearing. However, Judge Hirsch allowed Hawtin's counsel to make his full argument.

Here, because the result of the April 14 hearing was an amended final order for protection superseding the April 5 order, seemingly Judge Hirsch was attempting to modify a final protection order under RCW 26.50.130. However, Judge Hirsch's modification was not based on a substantive change, but rather her belief that there was a clerical error in the April 5 order through CR 60(a). Although Judge Hirsch was not properly acting under either of these authorities, they are instructive when weighing the process due for this hearing.

Considering the second *Mathews* factor, Hawtin was given the required five day notice under the DVPA. RCW 26.50.130. On April 6, Judge Hirsch verbally notified Hawtin that there would be a hearing on April 14. Accordingly, Hawtin appears to have had adequate *time* notice of the hearing. However, Hawtin was given little notice of the *subject matter* of the hearing because there was no formal motion for his counsel to make argument against.

Hawtin knew that Judge Hirsh believed there was a clerical error in the April 5 order, but he was not notified what this error was. He did not know that this error involved the relationship status of the parties. Counsel's lack of notice of the hearing's subject matter is illustrated when counsel argues about a possible error in the order and the court told counsel that this was not the error that concerned the court. Because none of the procedures in any applicable statute or court

21

rule were followed, and because Hawtin did not know the subject matter of the hearing, he was denied a meaningful opportunity to be heard.

Finally, the stated governmental interest here was to correct an alleged clerical error in the April 5 order for community safety purposes. Judicial actors have a recognized interested in correcting their own clerical errors. CR 60(a). Judge Hirsch discussed the clerk's duty to enter orders that do not contain errors and again mentioned her community safety concerns. However, as discussed above, the intervention in these proceedings was not done with proper judicial authority, and the only fact finder here did not find a credible threat to Hart regarding firearms. The government's stated interests here cannot outweigh Hawtin's interests in actual notice and proper procedure for the removal of his property rights.

Here, without a motion from the court explaining the expected content of the hearing, Hawtin's attorney was left to guess the subject of the hearing. Accordingly, we hold that Hawtin's right to due process was violated at the April 14 hearing.

ATTORNEY FEES

Both parties request attorney fees under RAP 18.1 and RCW 26.50.060. RCW 26.50.060(g) gives courts the discretion to "[r]equire the respondent to pay . . . reasonable attorneys' fees . . . ." Although that statute allows only petitioners an award of attorney fees, Hawtin argues it is inequitable and we should extend the language to respondents. We do not address the equities of the statute, but note that the statute gives the court *discretion* to award attorney fees. Based on the unusual procedure in this case, we decline to award reasonable attorney fees to either party under RCW 26.50.060.

Hawtin also requests costs on appeal as the prevailing party. RAP 14.2. We agree that Hawtin is the prevailing party on appeal under RAP 14.2 and is entitled to statutory costs and fees to be determined by a commissioner of our court after submitting a cost bill.

We reverse the April 6 order and reverse and vacate the April 14 order.[9] Should this matter be further litigated in the trial court, we remand to a different judge to maintain the appearance of fairness.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Melnick, J.

_____
Sutton, J.

---

[9] The record on appeal contains no orders for protection following the April 14, 2017 order, which expired in 2018. If there are any orders extending or renewing the April 14 order, they are void.