# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57948-1-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| DWAYNE EARL BARTHOLOMEW, | |
| Respondent. | |

PRICE, J. — Forty years after his conviction for aggravated first degree murder under chapter 10.95 RCW, Dwayne E. Bartholomew's sentence of life in prison without the possibility of release was declared unconstitutional.  Bartholomew was resentenced to life in prison with the possibility of release, but at the urging of the parties, the sentencing court did not set a minimum term of confinement.

Shortly thereafter, the Indeterminate Sentence Review Board (ISRB) sent a letter requesting that the sentencing court fix a minimum term for Bartholomew's confinement pursuant to RCW 9.95.011.  Following the ISRB letter, Bartholomew moved under CrR 7.8(a) for the sentencing court to fix a minimum term, asserting that failing to do so initially was a clerical error. The sentencing court granted Bartholomew's motion and fixed a minimum term of 380 months in confinement with credit for time served.

The State appeals, arguing that fixing a minimum term was outside of the relief available under CrR 7.8(a).  The State also argues that fixing a minimum term for Bartholomew's conviction

No. 57948-1-II

under chapter 10.95 RCW is not authorized until the legislature amends the sentencing laws. We hold that the sentencing court's order exceeded the relief available under CrR 7.8(a) and reverse.

FACTS

I. BACKGROUND

In 1981, when he was 20 years old, Bartholomew fatally shot an employee of a laundromat during a robbery. Bartholomew was convicted of aggravated first degree murder under 10.95 RCW, and in accordance with the sentencing statute specific to that crime, RCW 10.95.030, he was sentenced to the mandatory sentence of life in prison without the possibility of release.

In 2021, our Supreme Court reversed Bartholomew's sentence. *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 329, 482 P.3d 276 (2021). The Supreme Court determined that mandatory sentences of life in prison without the possibility of release were unconstitutional for defendants under 21 years old who were convicted of aggravated first degree murder. *Id.* at 325-26. The Supreme Court reasoned that there was no meaningful neurological difference between many 17-year-olds and 19- to 20-year-olds and explained that "sentencing courts must have discretion to take the mitigating qualities of youth . . . into account for defendants younger and older than 18." *Id.* at 326. The Supreme Court vacated Bartholomew's sentence and remanded his case for resentencing with the consideration of whether mitigating qualities of youth applied to him. *Id.* at 329.

II. BARTHOLOMEW'S RESENTENCING

A. SENTENCING COURT'S INITIAL DECISION

In January 2022, at his resentencing, Bartholomew argued the Supreme Court's decision in *Monschke* should be construed as extending the exceptions for defendants under 18 years old

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57948-1-II

included in former RCW 10.95.030 (2015) to defendants under 21 years old. Former RCW 10.95.030 generally requires life imprisonment without the possibility of release and, therefore, no minimum term of confinement:

> Except as provided in subsections (2) and (3) of this section, any person convicted of the crime of aggravated first degree murder shall be sentenced to life imprisonment without possibility of release or parole.

Former RCW 10.95.030(1). But the statute also includes exceptions for youthful offenders. For example, offenders between the ages of 16 and 18 are entitled to receive a minimum term:

> Any person convicted of the crime of aggravated first degree murder for an offense committed when the person is at least sixteen years old but less than eighteen years old shall be sentenced to a maximum term of life imprisonment and a minimum term of total confinement of no less than twenty-five years. A minimum term of life may be imposed, in which case the person will be ineligible for parole or early release.

Former RCW 10.95.030(3)(a)(ii).

Bartholomew primarily argued that, following *Monschke*, the language of the statute meant that, because he was over 18, the sentencing court could *recommend* a minimum term of confinement to the ISRB, but could not *require* a minimum term. Alternatively, Bartholomew argued that *Monschke* should be construed as extending the exception for offenders between the ages of 16 and 18 to those under the age of 21. At that point, the State agreed with Bartholomew's alternative argument and urged the sentencing court to resentence Bartholomew under the exception for those offenders between 16 and 18 in former RCW 10.95.030(3)(a)(ii).

The sentencing court agreed with the State's proposal and orally ruled that it would apply the exception for Bartholomew's resentencing.

3

No. 57948-1-II

B. State's Motion for Reconsideration

Four months later, the State reversed its position. The State moved for reconsideration, arguing that the exception for offenders between 16 and 18 years of age could not be extended to those under 21. The State contended that although the Supreme Court's opinion in *Monschke* made Bartholomew's mandatory life sentence unconstitutional, the sentencing court had no authority under the current sentencing statutes to fix any sort of minimum term.

The State explained that it believed the sentencing court could only impose two possible sentences:

> "[L]ife imprisonment without possibility of release or parole" pursuant to [former] RCW 10.95.030(1)[.]

Clerk's Papers (CP) at 781 (first alteration in original). Or, if Bartholomew's culpability was affected by the mitigating qualities of youth, then the State contended the statute would be modified by the *Monschke* decision as:

> "[L]ife imprisonment ~~without possibility of release or parole~~" pursuant to RCW 10.95.030(1). *In re Pers. Restraint of Monschke*, 197 Wn.2d 305 (2021), and Laws of 1981, ch. 138, § 22 (severability clause).

CP at 781 (alterations in original). But because former RCW 10.95.030 did not expressly address the setting of a minimum term for offenders over the age of 18, the State argued that no minimum term could be set without an amendment from the legislature.

4

No. 57948-1-II

In response, Bartholomew agreed that former RCW 10.95.030(1) applied, but argued that even if the sentencing court did not set a minimum term, the ISRB, under a different statute, would be able to release him.[1]

Without expressly addressing whether a minimum term was necessary, the sentencing court agreed that former RCW 10.95.030(1) applied and heard arguments from the parties about the role of Bartholomew's youth at the time of his crimes, ultimately determining that Bartholomew "was subject to the mitigating qualities of youth . . . ." CP at 850. Thus, on August 10, 2022, the sentencing court entered a judgement and sentence that imposed a life sentence *with the possibility of release*. As before, the sentencing court did not mention any consideration of a minimum term.

C. BARTHOLOMEW'S CrR 7.8(a) MOTION

About a month after Bartholomew's new sentence was entered, the ISRB sent the sentencing court a letter requesting a minimum term for Bartholomew's sentence. The ISRB's letter cited RCW 9.95.011, which generally requires the sentencing court to set a minimum term during sentencing for convictions before 1984. The statute provides,

> When the court commits a convicted person to the department of corrections on or after July 1, 1986, for an offense committed before July 1, 1984, the court shall, at the time of sentencing or revocation of probation, fix the minimum term. The term so fixed shall not exceed the maximum sentence provided by law for the offense of which the person is convicted.

---

[1] Bartholomew referenced RCW 9.95.115, which provides, "The indeterminate sentence review board is hereby granted authority to parole any person sentenced to the custody of the department of corrections, under a mandatory life sentence for a crime committed before July 1, 1984, except those persons sentenced to life without the possibility of parole. No such person shall be granted parole unless the person has been continuously confined therein for a period of twenty consecutive years less earned good time[.]"

5

No. 57948-1-II

RCW 9.95.011(1).

The State responded to the ISRB's letter, explaining its position that RCW 9.95.011 did not apply to aggravated first degree murder under chapter 10.95 RCW. The State reasoned that RCW 9.95.011 was a general statute and did not apply because a more specific statute, former RCW 10.95.030, governed sentencing for aggravated first degree murder. The State reiterated the point it made earlier to the sentencing court that there was no authority to impose a minimum term without a legislative fix.

A few weeks later, Bartholomew filed a motion with the sentencing court to set a minimum term. The motion exclusively relied on CrR 7.8(a), which allows the sentencing court to correct "clerical mistakes" "arising from oversight or omission" of the court. CrR 7.8(a). Bartholomew characterized the lack of a minimum term as a clerical error. Adopting the ISRB's position, Bartholomew argued that the more general sentencing statute, RCW 9.95.011, applied and asked the court to impose a minimum term of 360 months.

The State objected. The State argued that Bartholomew's motion exceeded the relief permitted by CrR 7.8(a) because setting a minimum term would not be correcting a clerical error. And the State repeated its position that even if the motion could be considered, the sentencing court had no authority to set a minimum term without a legislative fix.

The sentencing court granted the CrR 7.8(a) motion and set a minimum term, citing the authority in RCW 9.95.011(1). The superior court said that fixing a minimum term was necessary to give effect to Bartholomew's sentence and characterized its initial failure to fix a minimum term as an "oversight." CP at 872. The sentencing court set Bartholomew's minimum term as 380 months with credit for time served.

6

No. 57948-1-II

The State appeals.

ANALYSIS

The State's appeal implicates two separate but related issues: (1) whether a CrR 7.8(a) motion was a proper vehicle for the sentencing court to add a minimum term to Bartholomew's judgment and sentence, and (2) if so, whether the sentencing court was authorized to set a minimum term.

I. FAILURE TO SET A MINIMUM TERM WAS NOT A CLERICAL ERROR

The State argues that the sentencing court erred by granting Bartholomew's CrR 7.8(a) motion. The State asserts the setting of a minimum term was a substantive change, not a clerical error. Bartholomew responds that the sentencing court's initial failure to fix a minimum term was an oversight that warranted correction under CrR 7.8(a). According to Bartholomew, the sentencing court's order fixing a minimum term gave effect to its intent to provide for the possibility of release. We agree with the State.

CrR 7.8(a) allows the trial court to correct judgments when errors within resulted from an oversight or omission. The rule specifically states,

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

CrR 7.8(a). "Clerical errors are those that do not embody the trial court's intention as expressed in the trial record." *State v. Morales*, 196 Wn. App. 106, 117, 383 P.3d 539 (2016), *review denied*, 187 Wn.2d 1015 (2017). "These errors allow for amended judgments to correct language that did not correctly convey the court's intention or 'supply language that was inadvertently omitted from

7

No. 57948-1-II

the original judgment.' " *Id.* (quoting *Presidential Estates Apt. Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996)). "Errors that are not clerical are characterized as judicial errors, and trial courts may not amend a judgment under CrR 7.8 for judicial errors." *Id*. at 118.

Here, there is no question the sentencing court expressly sentenced Bartholomew to life with the possibility of release. Both the State and Bartholomew agreed that, after *Monschke*, such a sentence was appropriate. But the parties did not agree that a minimum term could be set, with the State arguing that no minimum term was authorized. Notably, following these arguments, the sentencing court did not mention setting a minimum term or cite to any authority that would enable it to set a minimum term.

It was only after the ISRB letter requesting a minimum term that Bartholomew moved for the sentencing court to fix a minimum term, arguing that the failure to do so was a clerical error. The sentencing court agreed with Bartholomew, fixed a minimum term, and characterized its failure to fix a minimum term earlier as an "oversight." CP at 872.

But the sentencing court minimized the significance of its alteration. In the face of strongly divergent arguments from the State and Bartholomew, the sentencing court's silence about a minimum term shows it did not intend to fix one when it entered the judgment and sentence. Whether that decision was based on its belief that it did not have authority to fix a minimum sentence or that it was unnecessary, nothing in the record demonstrates that the failure to fix a minimum term was a mere oversight. It was a substantive addition.

In fact, the sentencing court's decision to switch its statutory basis as authority to fix a minimum term can be seen as an admission that it needed a wholly different statutory foundation for its decision. Regardless of whether the sentencing court's newly adopted authority of RCW

8

No. 57948-1-II

9.95.011(1) for imposing a minimum term is correct or not, the acknowledgment that it needed to rely on different legal authorities shows this was a judicial error or mistake, not a clerical error under CrR 7.8(a).[2]  Thus, the relief requested in Bartholomew's motion exceeded the scope of CrR 7.8(a) and the sentencing court erred by granting it.  Because we reverse the sentencing court's CrR 7.8(a) order, we do not further address the sentencing court's authority to impose a minimum term.

CONCLUSION

We reverse the sentencing court's CrR 7.8(a) order.  Bartholomew's judgment and sentence, entered August 10, 2022, stands.

PRICE, J.

I concur:

LEE, J.

---

[2] At oral argument, counsel for Bartholomew suggested that we could consider his motion as having been pled under CrR 7.8(b) if we concluded that the order amending the judgment and sentence in this case did not correct a clerical error as contemplated by CrR 7.8(a). Wash. Court of Appeals oral argument, *State v. Bartholomew*, No. 57948-1-II (Sept. 11, 2023), at 17 min., 35 sec. through 17 min., 50 sec. (on file with court).  But we are neither permitted to raise an unpleaded claim sua sponte nor consider an entirely new theory for relief of which the opposing party has had no notice or opportunity to rebut. *See Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, ___ Wn. App. 2d ___, 534 P.3d 339 (2023); RAP 12.1.

But even if Bartholomew had brought a CrR 7.8(b) motion, we agree with the concurrence that relief would not have been appropriate because chapter 9.95 RCW does not apply to sentences for aggravated first degree murder.

No. 57948-1-II

CRUSER, A.C.J. (concurring) — I concur with the majority that Bartholomew was not entitled to relief under CrR 7.8(a). In my view, Bartholomew would also not have been entitled to relief under CrR 7.8(b) even if he had sought relief under that provision.

In this case Bartholomew argued, and the trial court agreed, that RCW 9.95.011 allowed the court to set a minimum term of confinement after which Bartholomew would become eligible for parole. I disagree. Because Bartholomew was convicted of aggravated first degree murder under RCW 10.95.020, his sentencing is exclusively governed by RCW 10.95.030. RCW 10.95.030 is, as the State notes, a specific sentencing statute that is "complete and specific, leaving no room for the application of general sentencing statutes." Br. of Appellant at 24. This is unlike ordinary first degree murder, which is prescribed in RCW 9A.32.030 and sentenced under the Sentencing Reform Act of 1981 (ch. 9.94A RCW).

Pursuant to 10.95.030(1) and the legislature's severance provision relating to chapter 10.95 RCW,[3] the only sentence the trial court had the authority to impose in this case was life in prison *with* the possibility of parole—which is the sentence the trial court imposed in the August 15, 2022 order on resentencing. Unfortunately, here, the Indeterminate Sentence Review Board (ISRB) has taken the position that it cannot execute the sentence of the court in the absence of the setting of a minimum term. But the plain language of Bartholomew's sentence makes him eligible for parole without the precondition of a minimum term. If the ISRB believed it could not execute this

---

[3] Pursuant to LAWS OF 1981, ch. 138, § 22, "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected."

No. 57948-1-II

sentence, then the proper procedure would have been for it to file a petition for post-sentence review under RCW 9.94A.585(7) and RAP 16.18(a).

Additionally, it is critical that the legislature enact a statutory provision covering offenders such as Bartholomew who committed aggravated first degree murder while they were 18, 19, or 20 years old, and for whom the trial court has determined that their crime was marked by the youthful offender's " 'immaturity, impetuosity, and failure to appreciate risks and consequences' " of their crime. *State v. Rogers*, 17 Wn. App. 2d 466, 474, 487 P.3d 177 (2021) (internal quotation marks omitted) (quoting, *inter alia*, *Miller v. Alabama*, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). RCW 10.95.030 currently addresses only those offenders convicted of aggravated first degree murder who were either under the age of 16 when they committed their crime (RCW 10.95.030(2)(a)(i)), or who were at least 16 but under the age of 18 when they committed their crime (RCW 10.95.030(2)(a)(ii)). The offenders convicted of aggravated first degree murder who were 18, 19, or 20 at the time of their crime are not addressed by the statute.[4]

---

[4] Although I agree with the State that it is incumbent on the legislature to act, and that principles rooted in separation of powers prevents us from rewriting sentencing statutes, I am not prepared to agree with the State's assertion that the only way an offender such as Bartholomew can obtain relief is to institute civil legal action against the ISRB or the legislature, and that the judiciary is powerless to act in the face of restraint that may be unconstitutional. Pursuant to RAP 16.4(c)(6) and (7), the court may grant relief to a personal restraint petitioner who demonstrates that the conditions or manner of the restraint are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington; or that other grounds exist to challenge the legality of the petitioner's restraint. Bartholomew, it must be noted, did not seek relief in this case pursuant to RAP 16.4.

No. 57948-1-II

As we near the third anniversary of our supreme court's decision in *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021), it is long overdue for the legislature to address this situation.

CRUSER, A.C.J.